### G. T. Moore v. Charles Rogan, Land Commissioner.

#### No. 1167. Decided March 30, 1903.

**1.—Public Land—Sale.**

Under sec. 6 of the "Act to define the school fund," etc., approved February 23, 1900, prior to its amendment by Act of April 15, 1901, lands belonging to the public domain and transferred to the school fund by that act were not made subject to purchase by settlers unless embraced within a tract containing 2560 acres or less. (Pp. 378, 379.)

**2.—Same—Mandamus.**

An applicant for mandamus against the Commissioner of the General Land Office, to compel reinstatement in his purchase of land which the commissioner, after recognizing, had canceled because of conflict with an existing lease, must show compliance, on his part, with a law authorizing his purchase, as well as the invalidity of the lease. (P. 379.)

Original application by Moore for mandamus against the Commissioner of the General Land Office.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General, for respondent.—We beg to submit another proposition as fairly arising under the general demurrer to relator's petition. We understand the rule to be in suits of this kind that the relator must by clear and specific averments show himself entitled to the relief prayed for. Every fact necessary to entitle relator to have the land awarded to him must be alleged.

The relator must clearly show that under the law and the facts existing at the time of making his application to purchase he was entitled to purchase. Burrell v. Blanchard, 51 S. W. Rep., 46; Arberry v. Beavers, 6 Texas, 473.

The application to purchase relied upon by relator, the survey, the award and subsequent cancellation thereof, were had previous to the passage of the act approved April 15, 1901, which took effect ninety days after adjournment of the Legislature (regular session) which occurred April 9, 1901. Chap. 88 Acts Reg. Ses. 27th Leg., p. 253.

So relator's case rests upon the terms of the Act of February 23, 1900, and he so treats it. The applications were made under the provisions of section 6 of that act, the part thereof which is material to this argument being as follows: "Any person desiring to purchase any portion of the land herein appropriated to the public school fund out of a tract containing 2560 acres or less," etc.

Except in those counties named in section 3 of the act no provision is made for the sale of land out of tracts containing more than 2560 acres. This oversight and omission was remedied by the amendment of section 6 by the act of the Twenty-seventh Legislature above referred to.

To authorize the sale to relator upon his application it was necessary that the land sought to be purchased be "out of a tract containing 2560 acres or less." This necessary fact is not alleged in relator's petition, and for this reason the general demurrer should be sustained.

It is of no importance that the Commissioner of the General Land Office refused to sell for other reasons. Willoughby v. Townsend, 93 Texas, 82; Arberry v. Beavers, supra.

*Ashby S. James, E. H. Yeiser,* and *A. C. Wilmith,* for petitioner.— The Assistant Attorney-General in behalf of the State filed at the conclusion of his brief and argument a typewritten paper, raising the question, which had not been presented directly prior to that time, to wit: That relator's petition had failed to allege that the land in controversy was a portion of a tract of land containing less than 2560 acres and situated in Borden County. Relator's counsel have made inquiry since this question has been directly presented to them, and they are informed now that the tract out of which the land in controversy was surveyed is a tract of public domain greater than 2560 acres; therefore, unless the fact that the Commissioner of the General Land Office approved the former survey, classified and appraised the land and offered it for sale, has the effect of placing the land upon the market under a survey ratified and approved by the Commissioner of the General Land Office, the demurrer of the respondent may be well taken. Relator, however, contends that as this survey was made by a regularly appointed surveyor authorized to make such surveys, and as the survey was afterwards presented to the Commissioner of the General Land Office and was by him approved, and the land classified and appraised and placed on the market for sale and even awarded, all of these facts are sufficient to fix the right of relator to have this land awarded to him now, and particularly is this so since the respondent fails to allege and show that anyone else has subsequently fixed any legal right to purchase this land by any subsequent compliance with the law. If this action of the Commissioner of the General Land Office had the effect to properly fix the right of the relator to purchase this land, and the rights of any other persons are in conflict with such acts, then, certainly, in view of the fact that the classification and appraisement as well as the survey were all performed by officers authorized to do these acts, and that thereafter the sale itself was made based upon these acts, it would seem to be certainly sufficient to entitle relator in any event to have the land sold and awarded to him.

In the above connection, the attention of the court is respectfully called to the amendment of the Act of February 23, 1900, by the Twenty-seventh Legislature, approved April 15, 1901 (see Gen. Laws 27th Leg., latter part of p. 254), which amendment reads as follows: "Provided, that where any of said lands have been surveyed prior to January 1, 1901, upon application to purchase and survey said Act of February 23, 1900, and the field notes have been recorded by the surveyor, said field notes may be recognized and accepted by the Commissioner of the General Land Office, except where in conflict with older surveys, upon the filing of either the original field notes or certified copies of the record of such surveys," etc. In this connection, the attention of the court is called to the fact that these sales were made on the original application

of relator to purchase these lands, the original field notes being on file in the Land Office, before any intervening rights; and the sales were canceled by the Commissioner only because of the lease, which your relator here attacks as being invalid. So the question before this court in this connection is as to the validity of the lease.

Written and printed argument was filed on behalf of relator by *Ashby S. James, E. H. Yeiser, D. J. Thomas, C. R. Kinchin,* and *A. C. Wilmith,* and on behalf of respondent by *West & Cochran, E. Cartledge,* and *Camp & Caldwell,* all addressed to the question of the validity of the lease relied on by respondent.

BROWN, ASSOCIATE JUSTICE.—Moore instituted this proceeding in this court to secure a writ of mandamus against Charles Rogan, Commissioner of the General Land Office, commanding him to rescind his action in canceling a purchase made by relator of two sections of land described in the petition, and to reinstate the contract of purchase and to notify the Treasurer of the State of Texas of his action in the premises so that the relator might make his payments according to his obligations and as required by law.

The petition alleges in substance, that on the first day of March, 1901, the relator, a citizen of Borden County, Texas, made application to the district surveyor of Howard County land district to survey for him certain public domain situated in Borden County. This application was made under the provision of chapter 11 of the General Laws of the first called session of the Twenty-sixth Legislature, page 29. A deputy surveyor of said district, in compliance with said application, surveyed two tracts, one being No. 4, in block T, containing 640 acres, classified by him as dry agricultural land, the other being No. 6 in the same block containing 341 acres, classified as dry grazing. The surveyor certified and recorded the field notes and plats of the surveys, and on the 25th day of March, 1901, returned the application of the relator for the survey and field notes of the two tracts surveyed thereunder to the Commissioner of the General Land Office at Austin. On the 18th day of January, 1902, the Commissioner of the General Land Office approved the surveys, classified No. 4 as dry agricultural land valued at $1.50 per acre and No. 6 as dry grazing land valued at $1 per acre, and notified Moore that he was entitled to purchase the land, whereupon Moore forwarded his application to purchase section 4, upon which he was then residing as an actual settler, and another application to purchase section 6, which was within a radius of five miles of section 4, as land in addition to his home section. Moore was an actual settler in good faith upon section 4 and complied with the law in making his application, in executing his obligation, and in making payment upon each tract sought to be purchased. The Commissioner of the General Land Office accepted the application for the purchase of each of said sections and awarded the land to Moore. On March 6, 1902, the said Commissioner canceled the

award that had been made to Moore, caused the Treasurer of the State to cancel the same on his records, and rejected the applications to purchase the land, assigning as a reason that it had been previously leased and was still subject to the lease which was in force and in good standing. Before the applications were made by Moore the land had been leased to O. T. Boyd for a term to expire August 12, 1902. Moore was the first to make application for the purchase of the land and no one had a preference right to purchase the same. The petition does not allege that the tract of land out of which the surveys were made contained 2560 acres or less, nor what number of acres it embraced. Relator claims in his petition that the provision of the law which created the absolute lease district, in which the land in question lies, did not apply to public domain, and that the lease constituted no legal barrier to his purchase. It is also alleged that if the law did apply to the land, then the Act of 1900 under which the purchase was made, authorized the sale of the land notwithstanding the lease.

Charles Rogan's term of office expired after the petition was filed, and J. J. Terrell, having been elected and qualified as his successor, filed his answer in this cause in which he demurs generally to the relator's petition, and specially excepting to the said petition says, "that it is insufficient since it does not appear by the allegation of the petition that the surveys or sections of land referred to were out of a tract containing 2560 acres or less; nor does it appear what was the size of the tract of land out of which the tracts applied for by relator were surveyed." The respondent pleads specially that the tract of land out of which it was sought to purchase the land in question contained more than 2560 acres, which is not denied.

The allegations of the relator's petition show that the land in question was a part of the public domain which was transferred to the public free school fund by an act of the first called session of the Twenty-sixth Legislature, entitled "An act to define the public school fund," etc., approved February 23, 1900. The petition shows that the land was not subject to sale by the Commissioner of the General Land Office by the proceeding which the relator adopted, unless it was embraced in the provisions of the following section of the above recited act:

"Section 6. Any person desiring to purchase any portion of the land herein appropriated to the public school fund out of a tract containing 2560 acres, or less, shall first make to the surveyor of the county or district in which the land, or a part thereof, is situated, written application, signed and sworn to by the said applicant, giving his postoffice address, and designating the land he desires to purchase by metes and bounds, as near as practicable, and stating that he desires to have said lands surveyed with the intention of purchasing the same, and that he is not acting in collusion with or attempting to acquire said land for any other person, stating therein whether or not he is claiming any preference right to purchase, and the nature of such preference right. It shall be the duty of the surveyor to file and record such application,

and, within sixty days of the filing thereof, to survey said land in accordance with the direction of the Commissioner of the General Land Office, into a section or sections, of one mile square each, whenever practicable, in case one or more sections are applied for; and in all cases such land shall be surveyed in a square or rectangular shape whenever practicable, and within thirty days of the date of said survey the surveyor shall certify to, record and plat the field notes of the same, and return same and the application to the General Land Office, and he shall state whether or not the land is agricultural, grazing or timbered, and if timbered the probable value of the land. The applicant shall pay to the surveyor one dollar for filing and recording said application, and shall pay such other fees as are now or may be provided by law for surveying lands. If the Commissioner of the General Land Office finds that the field notes are correct, and that the survey has been made according to law, he shall at once approve and file said field notes, and classify and value the land as the law requires, and notify, by mail, the applicant that the land is on the market for sale, stating the classification and the value thereof; and within sixty days of the mailing of said notice the applicant shall make application and affidavit to purchase said land, describe said land sought to be purchased in accordance with field notes approved by the Commissioner of the General Land Office and make first payment to the State Treasurer, and execute his obligation for the unpaid purchase money in the manner provided by law for surveyed school lands; provided, if the land sought to be purchased is detached lands, as defined in section 5 of this act, the affidavit shall not be required to state that he desires the same for a home or that he is actually settled thereon." Laws 2d Called Sess. 26th Leg., p. 29.

The allegations of the petition do not show that the land sought to be purchased was a part of a tract embracing 2560 acres, or less, and having failed to allege that the land was embraced in the terms of section 6, above quoted, the relator shows no right in himself to purchase, nor power in the Commissioner to sell the land.

The validity of the lease is immaterial, since the relator must fail for want of a right in himself to buy. The Commissioner having inadvertently exercised authority over the land which the law did not give him, had the right to cancel the void contract which he made with the relator.

The application for writ of mandamus is denied and the cost of this proceeding will be taxed against the relator.

*Mandamus refused.*