W. T. BURNAM v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1267. Decided February 15, 1904.

1.—School Land—Detached Section—Authority of Commissioner.

The act of the Commissioner of the General Land Office, in awarding a survey of school land to an applicant to purchase it as a section detached from other public land, is a merely ministerial, and not a judicial determination by him of the fact that it is so detached, and does not conclude the State nor prevent him from correcting his error, if it was not in fact a detached section, by subsequently canceling the sale. (Pp. 314-316.)

2.—School Land—Detached Section.

Sections of school land contiguous at one corner with another section which had been sold were no longer detached sections, subject to sale as such, after the rights of the purchaser of such contiguous section had been forfeited for nonpayment by decree of court filed in the land office; and it was immaterial that such forfeited section appeared still marked as sold on the abstracts furnished the assessor of taxes by the land office, such abstracts being for his guidance, and not for that of prospective purchasers. (Pp. 313-316.)

3.—Same—Purchase as Actual Settler.

An actual settler on school land who has applied to purchase other lands under the law for sale of detached sections, can not, as against a subsequent applicant to purchase them, demand that, on cancellation of his first purchase because the lands were not in fact detached, they be awarded to him as additional lands to his home place. (P. 316.)

4.—Purchase of School Land—Detached Sections.

Two sections of school land contiguous to a third one having been improperly sold as detached sections, a purchase of the third by another party,

as a detached section, was also invalid, and did not have the effect to make the purchase of the first two valid by making them detached. (P. 316.)

**5.—Same—Premature Application.**

The rule in Hazelwood v. Rogan, 95 Texas, 295, as to the effect of an award made on a premature application to purchase, after the land came on the market, does not apply to an acceptance and award on an application to purchase a tract as detached land made when the land was not detached or subject to sale as such. (Pp. 316, 317.)

**6.—Lease—Purchase—Application of Payments.**

A lessee of school land who abandons his lease and applies to purchase, can not demand that, where his attempted purchase is invalid, the payments made thereon be applied to keep his lease in force. (P. 317.)

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*Hill & Lee,* for relator.—When relator's applications were filed it devolved upon the Commissioner to pass upon the question of fact as to whether the lands were detached and subject to sale under relator's application. Article 4218c, Sayles' Revised Statutes, vested in the Commissioner "All the power and authority necessary to carry into effect" the provisions of that law, and expressly provided that he should "have full charge and discretion of all matters pertaining to the sale and lease" of the school lands. Article 4218y, while authorizing the sale of isolated and detached land, does not indicate how the fact that the lands are isolated and detached is to be ascertained. It must therefore follow that when application was made to purchase such land it became the duty of the Commissioner and he had the "power and authority" and was vested with the "discretion" to investigate the facts and determine whether the land was in fact detached. This was necessarily "matters pertaining" to the sale. The fact to be ascertained was jurisdictional, and when he found the fact he had the power to make the sale. If he erred in his conclusion it did and could not render the sale void, but at most only voidable. As said in League v. Rogan, 59 Texas, 431, when power exists in an officer to act his erroneous action is not void, but at most voidable. In Brown v. Shiner, 84 Texas, 510, when the question arose as to whether school land was in demand for actual settlement when a lease was issued, the court held that the finding of the Commissioner that it was not in demand for settlement is conclusive of the question. In that case, while the court could have inquired into the question, the lease would not be void, but voidable, because the question of whether the land was in demand for actual settlement, was a fact to be ascertained by the Commissioner, and the lease issued by him, if he erred in his conclusion, would be valid until set aside by the courts. While the Federal statutes in reference to the disposition of the public lands give to the findings of facts by the officer charged with their execution a broader power in express terms than the statutes of this State, yet we think the rules applied under them may be cited as applicable to the facts of this case. Lee v. Johnson, 116 U. S., 48; Johnson v. Towsley, 13 Wall., 79.

Had the Commissioner the power and authority to review, and to cancel and annul the action of his predecessor? We contend that he did not. We submit that the power to review and cancel sales is not vested in the Commissioner by any provision of the statute. His right to forfeit sales is limited to nonpayment of interest and failure to reside on the land. Arts. 4218l, 4218ll, 4218lll, Sayles' Rev. Stats. Nowhere does the statute give him power to cancel sales for any other cause. In the case of Harper v. Terrell the Commissioner classified and appraised school land and a sale was made thereunder. Ascertaining afterwards that he had made a mistake in the classification and appraisement, he canceled the sale. In that case it is conceded that the Commissioner acted under a mistake of fact, but this court in disposing of the case say that he had no authority to cancel the sale for that reason; that it was not a void sale, but "was made in the exercise of a power clearly vested in the Commissioner, and must stand until set aside by competent authority." While arising upon a different state of facts, the following cases hold to the same principle: Jenkins v. Chambers, 9 Texas, 235; Burleson v. McGehee, 15 Texas, 380; Blount v. Webster, 16 Texas, 650; Noble v. Union R. R. Co., 147 U. S., 165.

Relator in his petition alleges "that if a forfeiture of the said Priest purchase of section 94 was made in 1895 as claimed by the Commissioner, he is informed, believes, and upon information alleges the fact to be, that such forfeiture was not entered upon the record books of said office and said maps corrected to show the forfeiture, but that at the dates of his said applications to purchase, as aforesaid, the printed abstracts issued by said office and the maps and record books of said office showed that said section 94 had previous thereto been sold and did not show any forfeiture thereof." This allegation is not denied by respondent. It is true that he deduces from the facts alleged by him in his answer that the "records and files" showed that the lands sold to relator were not detached at the time of such sale, but other than the fact that a judgment of forfeiture had been had and a copy thereof filed in the Land Office and placed in a file relating to another survey, there is nothing in the answer to support his conclusion that the "records and files" showed a forfeiture. If the forfeiture had been carried forward in any specified record, we think respondent would have pointed it out. It therefore must follow that relator's allegation that "the maps and record books of said office showed that said section 94 had previous thereto been sold and did not show any forfeiture thereof, will be taken as true. In this state of the case the rule announced in Thomas v. Wolfe, 40 S. W. Rep., 183, is applicable. Respondent alleges that said section 94 was sold to W. J. Wilkinson, September 20, 1900, and patented to him February 14, 1902. If this was a valid sale, then under the decision of this court, there being no intervening rights, relator's purchase became effective from the date of such sale. Hazlewood v. Rogan, 95 Texas, 295; Steward v. Wagley, 68 S. W. Rep., 297; and we understand that this court in refusing a writ of error in Ford v. Brown, 74 S. W.

Rep., 535, and 75 S. W. Rep., 893, reaffirmed this doctrine. It is true the Commissioner acted upon relator's applications before he did Wilkinson's, but in August, 1902, after the sale and patent to Wilkinson, he recognized relator's purchase as valid and so ruled.

At the time of the sale to relator he had a valid lease on 62 and 66 with the rentals fully paid up, and since the cancellation of his purchase he has tendered to the Treasurer an amount which, added to the sums paid by him as first payments and interest on his purchases, is more than sufficient to pay all rentals which would have been due under his said lease, and he contends that if the sale to him was void his lease was still in force, and the Commissioner upon discovering the error of the Land Office ought to have had his money applied to the rentals. Smith v. McClain, 74 S. W. Rep., 754.

Again, the allegations of the petition show that relator's home place was within the distance and he was qualified to purchase the land as additional to his home tract, and we contend that the applications were sufficient to sustain his purchase under article 4218fff, and this fact could have been shown had an opportunity of presenting the facts to the Commissioner before the ex parte proceedings and cancellation been allowed relator.

*C. K. Bell,* Attorney-General, and *T. S. Reese,* Assistant Attorney-General (*A. R. Pool,* for respondent Ellis), for respondents.—Whether sections 62 and 66 were in fact detached, within the meaning of article 4218y, Revised Statutes, at the time of relator's purchase, depended upon the status of section 94, as to whether it was then public land belonging to the State. The allegations of respondent Terrell's answer show clearly that this section 94 was at that time unsold public land belonging to the State, and under valid lease as such. These allegations of the answer are not directly contradictory of anything alleged in relator's petition. So that it appears from the allegations of the answer that these two sections were not, at the date of the sale to relator, in fact detached. The sale of these two sections as detached lands without actual settlement can only be accounted for upon the theory that section 94 having been previously sold, as indicated by the mark "F 14146" which was placed on the map after said sale, it was assumed without further investigation or inquiry that this sale still held good. From the allegations of the petition it appears that the papers in this file showed that this sale had been forfeited, and other records showed that after the forfeiture the section had been leased, and was under lease at the date of relator's application. It further appears that this F 14146 on this section as delineated on the map did not indicate that it was at that time sold school land, but only that it had been sold at one time. In fact the same condition was shown by the map as to sections 66, upon which there was marked, on the map, "F 7380," and 62, on which was marked "F 28109." So that at the time of the sale to relator these two sections were not only in fact not detached, but there was nothing on

the maps or among the records or files in the General Land Office indicating that they were, but on the contrary the records, files and maps contain positive affirmative evidence that they were not, and the records of the county clerk's office of Menard County must be presumed to have shown that this section 94 was on the market for sale at that date, and also that it was then under lease from the State.

It appears then that the only condition upon which the Commissioner could have been authorized to make this sale did not exist in fact, and further not only did not appear from the maps, files and other records of the General Land Office to exist, but affirmatively appeared therefrom not to exist. This takes this case entirely out of the doctrine announced by the Court of Civil Appeals in Thomas v. Wolfe, 16 Texas Civ. App., 24, relied upon by relator. The principles laid down in Eastin v. Ferguson, 4 Texas Civ. App., 643, and Burnett v. Winburn, 25 S. W. Rep., 970, are, we think, decisive of this case. It is hardly necessary to cite authority upon the proposition that a sale of school lands without authority is void. The present Commissioner in canceling the sale to relator did nothing more than act upon a result which the law declared. If by doing so he overruled the decision of his predecessor, it is nothing more than has been done, and must, in fact, always be done when an erroneous or illegal sale is made by the Land Commissioner, whether caused by mistake of law or of fact.

GAINES, CHIEF JUSTICE.—This is a petition for the writ of mandamus filed by Burnam, as relator, to compel the Commissioner of the General Land Office to reinstate him as purchaser of two sections of school land in Menard County, and in the event that can not be done to recognize him as lessee of the lands from the State. Ed Ellis, who made application to purchase the land subsequent to that of relator, was made a party defendant to the suit.

The following are the facts disclosed by the petition and answers: The lands in controversy were a part of the school lands of the State and are known as section 66, in the name of Beaty, Seale & Forwood, and section 62, in the name of J. H. Gibson. The southwest corner of section 66 connects with the northeast corner of section 94 in the name of J. H. Gibson, which is also a school section. The northwest corner of section 62 also connects with the southeast corner of the latter section. But neither section 66 nor section 62 touch any other survey of school lands the title to which remained in the State.

We will state the transactions which resulted in this controversy, as nearly in the order of time as may be practicable. In 1883 section 94 was regularly sold by the Commissioner to one Priest; but in 1895, by a decree of the District Court in a suit brought by the State, the right of the purchaser was declared forfeited for the nonpayment of interest. A copy of that decree was filed in the Land Office on the 22d day of August of that year. On the 10th day of the same month, the relator applied for a lease of sections 62 and 66 for the term of ten years.

They were awarded to him as lessee and his lease was kept in good standing up to August 14, 1900.

In June, 1900, relator made application to purchase section 66, and in July, of the same year, he applied also to purchase section 62. In his applications he complied in all respects with the law for the sale of "isolated and detached" sections of school lands. They were filed in the Land Office on the 16th day of June and the 8th day of July respectively, and the lands were awarded to him by the Commissioner then in office—the section 66 on the 28th day of July and section 62 on the 27th day of August, all in the same year. At the time of these awards, the map in the Land Office had upon section 94 the mark "F. 14146"—which, according to the practice in the Land Office, referred to the file number of the papers relating to the section, and was intended to show that the section had been sold to a purchaser under the statutes for the sale of the school lands, but did not show that the title had ever passed out of the State. This mark was placed upon the map in 1883, when the land was first sold. It also appears that in the abstracts of lands subject to taxation, furnished by the Commissioner of the General Land Office to the assessors of the counties from the year ending December 31, 1885, and for each successive year thereafter to and including the year 1900, section 94 was entered as having been sold to Priest.

On the 30th of August, 1895, after the sale of section 94 to Priest was forfeited, and a certified copy of the judgment of forfeiture had been filed in the Land Office, it was leased to one Perry Crowell for the term of five years. On August 6, 1900, one Wilkinson, as assignee of this lease, made application to purchase the survey as a detached section and his application was accepted and the land awarded to him. Having paid the purchase money in full, on February 14, 1902, a patent therefor was issued to him.

On the 9th day of March, 1903, the respondent Terrell as Commissioner of the General Land Office canceled each of the sales made to relator by his predecessor in office.

It therefore appears, from the facts stated, that at the time that the relator made his respective applications to purchase the two sections of land in controversy, and at the time they were respectively awarded to him, section 94, which was the connecting link between sections 62 and 66, had been sold by the Commissioner under the terms required by the statute, but that the inchoate title thus acquired by the purchaser had been annulled by a judicial forfeiture for his failure to comply with the obligation of his contract; and that that section had become again a part of the State's school lands. As we understand the position of relator, it is not claimed that at the time the lands were awarded to him they were in fact detached. It is insisted, however, that since the Legislature has invested the Commissioner of the General Land Office with the power to sell the "isolated and detached" sections of school lands in certain counties of which Menard is one, the duty is necessarily devolved upon him to determine, in the first instance, what

sections are so isolated and detached; and that when he has determined that question and made a sale accordingly, his decision is conclusive upon the matter. It is a well recognized rule, that, where an officer is empowered to determine a question of fact, in the absence of some provision of law for revision of his ruling, his decision is binding upon the courts. But does the case before us fall under that rule? The statute in question is in these words: "And all sections and fractions of sections, in all counties organized prior to the first day of January, 1875, except El Paso, Presidio and Pecos counties, which sections are isolated and detached from other public lands, may be sold to any purchaser, except to a corporation, without actual settlement, at one dollar per acre, upon the same terms as other public lands are sold under the provisions of this chapter." 2 Batts' Rev. Stats., art. 4218y. This does not in express terms authorize the Commissioner of the General Land Office to determine what sections were detached and what were not. . But it is true that in order to exercise the authority conferred by this provision the Commissioner must first satisfy himself that the land is detached. But were the circumstances under which this fact was to be ascertained such as would indicate that the Legislature contemplated that in ascertaining the fact, he should act in a quasi judicial capacity rather than in that of a ministerial officer? The distinction between the ministerial and judicial functions of executive officers is thus defined by Mr. Justice Wheeler in the case of the Commissioner v. Smith, 5 Texas, 479: "The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial." When the act in question was passed, most of the school lands had been surveyed; the surveys had been delineated upon maps which were kept in the General Land Office. The sales were also made through that office, and the papers and records pertaining to such were held there on deposit. All the Commissioner was called upon to do in order to ascertain what lands were in fact detached and subject to be sold under the statute was to refer to the maps and the records on file in his office. Most duties that executive officers are called upon to perform are dependent upon the existence of one or more facts; and very few occur in which a fact can be more readily ascertained by an officer in charge of a department of the State government than the fact that a section of school land has become "isolated and detached." Certainly the statute quoted does not expressly confer any quasi judicial authority upon the Commissioner to determine the question; nor do we think, that, under the circumstances, is any such authority to be implied. Let us suppose that the sections in controversy had been in fact detached and the fact clearly appeared by the map and records in the Land Office, and an applicant had made application as

required by the statute for their purchase, and that the Commissioner had rejected the application; it seems to us that, upon a proper proceeding for a writ of mandamus to compel him to accept the applications, this court would not hesitate to grant the relief sought.

The fact that the lands appeared upon the abstracts furnished the assessors of taxes, as having been sold, can, in our opinion, make no difference. The purpose of furnishing these abstracts was merely to inform the assessors what lands were subject to taxation. They were not made out for the guidance of prospective purchasers.

It is plain that in this case the Commissioner inadvertently made a mistake and, acting upon the belief that the land had been detached, accepted the relator's applications to purchase. Mistakes of a like character are not infrequent and are perhaps in a measure unavoidable. The cases which are brought to this court show that in such case it is the practice in the Land Office for the Commissioner to correct his mistake by rescinding his previous action, and where he has erred in making a sale to cancel his award. This seems to us a legal and proper practice; and that when the mistake is discovered the duty may be performed, either by the officer who made it, or by his successor in office.

For these reasons, we think the mandamus to reinstate the relator as a purchaser of the two sections of land in controversy should not be awarded.

The relator further avers, that, at the time he made his applications to purchase sections 66 and 62, he was the owner of and resided upon another survey of land, that these sections were within a radius of five miles of such survey, and prays, that, in the event that these lands in controversy were not legally sold as detached lands, he be held a purchaser as an actual settler. It is sufficient in answer to this prayer to say, that in order to have entitled him to purchase as an actual settler, his applications should have been placed on that ground, and, in his affidavit, he should have made oath as to the facts of his ownership of and residence upon his home survey. This was not done. Therefore, although he may have been competent to purchase as an actual settler, not having applied to purchase as such, he acquired no right by his applications unless the lands were in fact detached.

It also appears by the allegations of the petition and answer that after the relator was accepted as a purchaser, section 94 was applied for by one Wilkinson as a purchaser and that it was awarded and patented to him. But it also appears from the answer that section 94 was sold to Wilkinson as a detached section upon the theory that sections 66 and 62 had been legally sold. This we hold was not correct, and that therefore the sale of section 94 was not valid and did not detach the other two sections with which it was connected. Besides we think that the rule announced in Hazelwood v. Rogan, 95 Texas, 295, in reference to premature applications to purchase, would hardly apply to the facts of this case. In that case the application was made a very short time before the land was on the market and the award was made after the land

became subject to sale and before any intervening right had accrued. Here, when the application was accepted and the award was made, the land was not detached and was not subject to sale as such.

It is also claimed, that, in case the sales to relator should be held void, since at the time of relator's attempt to purchase the land in controversy they were leased to him for the term of ten years extending from August 10, 1895, and the lease was in good standing, and since the purchase money paid by him is sufficient to cover the accrued rents, the money should be applied to the rent, and he should be reinstated as lessee. Where a lessee of the public free school lands, before the expiration of his lease, has, with the concurrence of the Commissioner, attempted to renew and extend his lease for an additional term of years, we have held that the attempted new lease is invalid, but where the rents paid under the attempted lease are sufficient to keep the old lease in good standing, they will be applied to the valid lease and the rights of the lessee thereunder preserved. Such is not the case before us. Here, since his attempted purchase, the relator has paid no rents; and we are of opinion that the Commissioner of the General Land Office has no right or authority to apply the purchase money paid by him to the satisfaction of the rents that would have accrued had the lease remained in force.

Our conclusion is that the writ of mandamus should be refused, and it is accordingly so ordered.