The judgments of the district court and the Court of Civil Appeals are affirmed.

---

MITCHELL et al. v. THOMAS.   (No. 373.)†

(Court of Civil Appeals of Texas. El Paso. Dec. 24, 1914. Rehearing Denied Jan. 21, 1915.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—ADDITIONAL LAND—CANCELLATION—VALIDITY—COMMISSIONER'S AUTHORITY.

Rev. St. 1911, art. 5406, vests in the commissioner of the general land office authority over all matters pertaining to the sale and lease of school lands, and article 5424 provides for forfeiture by a purchaser for failure to reside on and improve the land purchased in good faith, declaring that such a forfeiture shall have the effect of placing the land on the market without any action of the commissioner. Article 5426 declares that where a purchaser buys additional lands, a forfeiture for legal cause of the residence section shall work a forfeiture of the entire purchase. *Held,* that the commissioner's power to forfeit additional land for nonoccupancy of the home section depends on the fact of nonoccupancy, and not on the commissioner's determination, he having no power to forfeit unless there is actual nonoccupancy by the purchaser; and hence, an unauthorized forfeiture was not effective to place the land on the market so as to justify sale to another.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—FORFEITURE—MARKET.

Under Rev. St. 1911, art. 5424, providing that all forfeitures of school land for nonoccupancy shall have the effect of placing the land on the market without any action on the part of the commissioner of the general land office,

the commissioner's mere inadvertent and unauthorized attempt to forfeit school land for nonoccupancy does not place the land again on the market, nor prevent him, on ascertaining his mistake, from setting aside the entry of forfeiture.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—FORFEITURE — NONOCCUPANCY — RESTORATION OF LANDS TO MARKET.

Where an actual forfeiture of a purchase of school lands for nonoccupancy has taken place, an entry of the forfeiture by the commissioner is necessary to again place the land on the market.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

4. PUBLIC LANDS (§ 180*)—SCHOOL LANDS—FORFEITURE—ACTS OF LAND COMMISSIONER.

The act of the commissioner of the general land office in declaring purchased school lands forfeited is not quasi judicial so as to preclude judicial review of the question of nonoccupancy, for which the forfeiture was ordered.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 584; Dec. Dig. § 180.*]

5. LIMITATION OF ACTIONS (§ 130*) — STOPPING LIMITATIONS—COMMENCEMENT OF SUIT —DISMISSAL.

A suit voluntarily dismissed by plaintiff without a trial on the merits, in the absence of any showing of the reason for such dismissal, so as to show that it was involuntary, did not interrupt the running of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 539, 545, 553–566; Dec. Dig. § 130.*]

6. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—INADVERTENT FORFEITURE—LIMITATIONS.

Where defendants and those under whom they claimed title to certain school land purchased by the entryman as additional land in every way complied with the law under which their purchase was made, the land commissioner's inadvertent notation of a forfeiture of the sections to which the land in controversy was additional land did not put the one-year statute of limitations (Acts 29th Leg. c. 29) in motion so as to require ·defendants to sue to quiet their title within one year on pain of losing their right to the land to a subsequent purchaser.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Presidio County; W. C. Douglas, Judge.

Trespass to try title by C. O. Thomas against T. C. Mitchell and another. Judgment for plaintiff, and defendants appeal. Reversed and rendered in part and remanded for retrial on the issue of plaintiff's claim for permanent improvements, etc.

J. A. Gillett and Hudspeth, Dale & McDonald, all of El Paso, for appellants. Walter Gillis, of Del Rio, and J. D. Martin, of Alpine, for appellee.

WALTHALL, J. This is an action of trespass to try title, brought by ·C. O. Thomas, appellee, against T. C. and C. T. Mitchell, appellants, in the district court of Presidio county, Tex., on May 5, 1913, in which appellee sought to recover of appellants title and possession of public free school section No. 20

---

in block No. 1 in that county. Appellants' answer denied the trespasses, injuries, and wrongs complained of, and set up a cross-action against appellee, claiming title in themselves to said section. Appellee entered a plea of not guilty to said cross-action and further pleaded his title specially. The case was tried before the court without a jury. As all the facts showing the titles under which appellants and appellee claim to own said section are set out under the trial court's findings of facts, and no objection being made by either appellants or appellee to said findings, we here copy them and make them our own findings of facts:

"First. February 2, 1907, proper applications of Gregorio Biscanio were filed in the land office to buy section 415, block 8, Presidio county as a home tract and section 405 of same block as additional. Said lands were on the market and subject to sale to Biscanio.

"Second. March 6, 1907, said two sections were duly awarded to Biscanio.

"Third. (No date given) Biscanio settled on section 405 within 90 days after the date of his award.

"Fourth. May 27, 1907, Biscanio's affidavit of settlement on section 405 was filed in the land office.

"Fifth. August 29, 1908, Biscanio's application, in proper form, to purchase section 20 (the tract herein sued for), as additional to section 415, was filed in land office. He was actually occupying section 405 at the time and had complied with all requirements of the law for the acquisition of the three sections above described.

"Sixth. September 12, 1908, Biscanio's purchase of section 415 was forfeited by the commissioner for 'failure to reside on and improve, and collusion,' and section 405 for 'failure to settle, reside upon, and improve, and collusion.' The facts did not exist to justify this cancellation.

"Seventh. September 23, 1908, Biscanio's application to purchase section 20 was rejected by the commissioner because 'the question of ownership of your home tract is now pending in the district court of Travis county and is not proper base for the purchase of additional land.'

"Eighth. June 14, 1910, Biscanio conveyed by quitclaim deed to E. B. Quick and Gus Elmendorf all of his right to sections 405, 415, and 20.

"Ninth. September 6, 1910, application of C. O. Thomas in proper form to purchase section 20 as a home tract filed in land office. He complied with all requirements of law to entitle him to an award.

"Tenth. October 4, 1910, section 20 was duly awarded to Thomas.

"Eleventh. December 19, 1910, Thomas actually in person settled upon section 20.

"Twelfth. January 3, 1911, Thomas' affidavit of settlement on section 20 was filed in the land office.

"Thirteenth. April 8, 1911, proof of occupancy on section 405 by Biscanio for three years, from February 2, 1907, filed in land office. This affidavit is defective in that it shows three years' occupancy from date of sale, instead of three years from date of award (March 6, 1907), but the testimony shows three years' occupancy from date of settlement.

"Fourteenth. August 21, 1911, Quick and Elmendorf filed suit of trespass to try title to section 20 in the district court of Presidio county, against C. O. Thomas, and obtained service on defendant.

"Fifteenth. May 30, 1912, Biscanio's purchase of sections 405 and 415 was reinstated by land commissioners.

"Sixteenth. June 6, 1912, Quick and Elmendorf conveyed all of their interests in sections 20, 405, and 415 to T. C. and C. T. Mitchell by quitclaim deed.

"Seventeenth. August 19, 1912, Thomas and Biscanio had complied with all requirements of law for the acquiring of their respective lands, such as making interest payments, occupancy, and the like, up to this time.

"Eighteenth. August 19, 1912, the award of section 20 to Thomas canceled, and said section 20 awarded to Biscanio on his application filed August 29, 1908. Thomas had not defaulted or failed in any particular in his contract obligations to justify a cancellation of his award on any statutory ground.

"Nineteenth. August 20, 1912, Quick and Elmendorf dismissed their suit against Thomas, which was filed August 21, 1911.

"Twentieth. May 5, 1913, this suit filed in district court of Presidio county by C. O. Thomas against T. C. and C. T. Mitchell.

"Twenty-first. July 10, 1913, quitclaim deed Biscanio to Quick and Elmendorf, dated June 14, 1910, and quitclaim deed Quick and Elmendorf to T. C. and C. T. Mitchell, dated June 6, 1912, filed in the land office.

"Twenty-second. January 20, 1914, the trial of this case commenced.

"Twenty-third. January 20, 1914, quitclaim deed of this date (executed after the beginning of this trial) Biscanio to T. C. and C. T. Mitchell to sections 20, 405, and 415 was introduced.

"Twenty-fourth. Thomas completed his three years' residence on section 20 and made the necessary improvements, and he and Biscanio have made all payments due the state.

"Twenty-fifth. That Biscanio was 21 years old, and in all things qualified to purchase school lands at the time he filed his application in the land office for the purchase of section 20; that section 20 is within a radius of five miles of section 415, his home section; that Biscanio had never purchased any lands prior to his purchase of the complement of sections of which 415 is a basis, and that he was hence qualified in all things to make the purchase of section 20; likewise Thomas was 21 years of age at the time he applied to purchase section 20, being apparently upwards of 50 years old at this time."

Under appellee's claim of valuable improvements made in good faith, the trial court found, and which we adopt, that appellee within five months after the award of section 20 placed permanent and valuable improvements on said section 20, aggregating $590; that same was placed on said land in good faith, that is, "while under the good faith and belief that the said land had been regularly and lawfully acquired by him under a valid contract of purchase from the state." The court found that the value of the improvements placed on the land by appellee, not exceeding the amount to which the value of said land was actually increased thereby, was $600; that the value of the use and occupation of section 20 during the time appellee has been in possession (exclusive of the value of the improvements) was $162.-50; that the value of section 20 without the improvements is $1,280 over and above the amount still owing the state, the value of the use of section 20 from August 19, 1911 (two years prior to the date of filing defendants' cross-action), to date of trial, was $150, and from June 6, 1912, $80; that appellee was continuously in possession of and using section 20 from December 19th to date of trial;

that appellee had taken firewood from said section to the value of $5. On the above facts, the trial court rendered judgment for appellee for title and possession of section 20. Appellants filed motion for new trial and, it being overruled, gave notice of appeal and filed assignments of error.

Appellants, in their brief, group their first, second, third, fourth, fifth and sixth assignments of error, and submit the same under five propositions, all germane to the assignments and all challenging the correctness of the trial court's conclusion of law upon the facts found, and upon which he entered judgment for appellee, the propositions, in effect, being that the entries of forfeiture by the commissioner of general land office were entirely ministerial; that the entries of forfeiture alone, no abandonment of the home section having taken place, did not have the effect to put section 20 back on the market, and that because no abandonment had in fact taken place, section 20 was not on the market and the award to appellee was a nullity. The appellee's counter propositions present directly opposing propositions of law to each of appellants' propositions and all undertaking to sustain the correctness of the trial court's conclusions of law arising on the facts found. The counter propositions are to the effect that a cancellation by the commissioner of the award to Biscanio was not void but voidable only, and that the award to appellee was valid and binding on the state and appellants until set aside in a proceeding for the purpose. We think it unnecessary to state the propositions and counter propositions under these assignments more fully, as in our opinion only one question of law is presented: Did the entries of forfeiture by the commissioner of the general land office shown in the court's findings of facts have the legal effect to place section 20 back on the market and subject to purchase by appellee?

The trial court found that the purchaser, Biscanio, had, in every respect, fully complied with all the requirements of the law for the acquisition of all three of the sections of school land involved in this controversy; that, while the commissioner of the general land office had entered a forfeiture of the home section 415 for "failure to reside on and improve, and collusion" and had entered a forfeiture of section 405 for "failure to settle, reside upon, and improve, and collusion," and had rejected Biscanio's application to purchase section 20 because "the question of ownership of your home tract is now pending in the district court of Travis county, Tex., not proper base for the purchase of additional land." Biscanio having made proper application to buy section 20 as additional land, the facts did not exist to justify the commissioner in indorsing the forfeitures or making a cancellation of sections 415 or 405, or said section 20. Articles

5406, 5424, and 5426 of Revised Civil Statutes 1911, are the only articles that seem to apply to forfeitures of school lands, except for nonpayment of interest.

[1] Article 5406 refers to the duties of the commissioner, and provides:

"The commissioner of the general land office is hereby vested with all the power and authority necessary to carry into effect the provisions of this chapter [chapter 9, relating to the sale and lease of public free school and asylum lands], and shall have full charge and discretion of all matters pertaining to the sale and lease of said lands, and their protection from free use and occupancy and from unlawful inclosure, with such exceptions and under such restrictions as may be imposed by the provisions of this chapter, or the Constitution of this state."

The rest of the article authorizes the commissioner to adopt such resolutions.

Article 5424:

"Every purchaser shall be required within three years after his purchase to erect permanent and valuable improvements on the land purchased by him, which improvements shall be of the reasonable market value of three hundred dollars. If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the state, to the same extent as for the nonpayment of interest, and such land shall again be upon the market as if no such sale and forfeiture had occurred; and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the commissioner of the general land office."

The rest of the article has no application.

Article 5426:

"When any purchaser buys and settles upon a section, or part of a section, of school lands, and buys, either at the same time or subsequently, other lands in addition thereto, a forfeiture for any legal cause of the part on which he resides, at any time before the three years' residence thereon has been completed, shall work a forfeiture of the entire purchase, except such part thereof as he may have previously sold to another."

The rest of the article has no application.

It will be seen from the reading of the sections above that it is the failure of the purchaser to comply with the requirements of the law that works the forfeiture of his purchase, and that without any action by the land commissioner.

From the trial court's findings of fact, it appears that on the 29th day of August, 1908, when Biscanio made and filed his application in proper form to purchase section 20, there was nothing to prevent the sale to him on said application of section 20, except the entries above noted, made by the commissioner as to Biscanio's home tract.

Both the commissioner and the trial court found that no fact existed that gave the commissioner the power, under the law, to make any entry of forfeiture of the two sections, or to reject Biscanio's application to purchase section 20, and the commissioner, so concluding, canceled the entries of his forfeiture of the two sections, reinstated Biscanio's application to purchase section 20,

on his application filed August, 1908, and canceled the award of section 20 made to Thomas.

In the case of Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71—a case very similar to the case at bar in many of its facts, and we cite it only for the purpose of quoting from that case on the question of the power of the commissioner to enter forfeitures, and on the question as to whether an entry of forfeiture of a purchase, when the facts do not exist to authorize the entry, has the effect to place the land back on the market—in that case, as in this, the commissioner of the land office had entered a forfeiture for abandonment of the land, and reinstated the purchaser's award. The trial court in that case held that, although there had been no abandonment, the commissioner's indorsement of forfeiture operated as such, and that the commissioner's attempted reinstatement was unauthorized, and hence that the land was on the market at the time Bibb made his application to purchase. In that case, the Court of Civil Appeals held, and a writ of error was refused, that:

"The power [of the commissioner to forfeit] is dependent upon the fact. Where the fact of abandonment does not exist, the power of forfeit on this ground does not exist. The court, upon sufficient evidence, as we think, found that no abandonment of the land in controversy had occurred on January 22, 1901, when the commissioner attempted to forfeit it, and the attempt, therefore, *had no force or effect whatever.* He hence could certainly cancel and set aside as he did, on February 7, 1901, the unauthorized, inadvertent attempt to forfeit."

This case, we think, is directly in point and conclusive as to the legal effect of any entry of forfeiture made by the commissioner on any purchase where no cause for a forfeiture named in the statute has in fact taken place. The entry by the commissioner of forfeiture of a purchase in the absence of the actual fact named in the law upon which a forfeiture could be made, is a mistake, an inadvertence, an unauthorized entry, one that he can himself correct, and that the mistake, though entered, has "no force or effect whatever" on the purchaser's claim. Burnam v. Terrell, Commissioner, 97 Tex. 309, 78 S. W. 500. If the attempted forfeiture of Biscanio's purchase had the effect to put the land on the market, it would not be true that the attempted cancellation of Biscanio's purchase had "no force or effect whatever."

The court, in discussing the Johnson v. Bibb Case, referred to the Moore v. Rogan Case, 96 Tex. 375, 73 S. W. 1, in which the commissioner of the general land office had inadvertently accepted an application for the purchase of land not authorized to be sold, and in which Judge Brown of the Supreme Court uses the following language:

"The commissioner, having inadvertently exercised authority over the land which the law did not give him, had the right to cancel the void contract which he made with the relator."

[2] Section 5424, Revised Statutes, above quoted, provides that:

"All forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the commissioner of the general land office."

[3] But the statute nowhere provides that the mere inadvertent, unauthorized attempt of the commissioner to forfeit the purchase has that effect. It is the fact of nonoccupancy of the land, and not the entry of the commissioner, that causes the forfeiture of the purchase. After the actual forfeiture for nonoccupancy has taken place, an entry of the forfeiture by the commissioner is necessary to again place the land on the market. In Bumpass v. McLendon, 45 Tex. Civ. App. 519, 101 S. W. 491, where the commissioner after awarding the land to McLendon, had indorsed across the purchase-money obligation of McLendon, "Land forfeited for abandonment 4—20—1901, Charles Rogan, Commissioner," and after execution sale of the land, at which Bumpass became the purchaser, in a suit in trespass to try title, Bumpass offered to show that McLendon had fully complied with all requirements of the law, and that the facts did not exist that authorized a forfeiture. The trial court refused to hear the evidence on the ground that the award to McLendon had been forfeited. The Court of Civil Appeals said:

"After the award, therefore, to J. D. McLendon, January 22, 1900, the land in controversy was no longer upon the market and subject to the application of and sale to defendant in error by the state, until the previous award to J. D. McLendon had been *legally forfeited* and the land *again placed* upon the market."

In Briggs v. Key, 30 Tex. Civ. App. 565, 71 S. W. 43, the Court of Civil Appeals held that an award of school land by the commissioner of the general land office, void because the applicant was not an actual settler, did not have the effect to take the land off the market. It is the provision of the law requiring an actual settlement on the lands, and the fact of actual settlement, that has the effect to take the land off the market, and not the award of the commissioner under a misapprehension of the fact of settlement. Is it not also true that the converse of the proposition, only the provision of the law declaring a forfeiture of the purchase on the ground of abandonment, and an actual abandonment of the land by the purchaser as a fact, and not a misapprehension on the part of the commissioner as to the fact of abandonment, that has the effect to put the land on the market again? We so understand the law.

[4] Appellee insists that the act of the land commissioner in declaring the lands forfeited was a quasi judicial act, and not merely ministerial in its nature, because it involved the exercise of judgment and discretion in determining the fact of abandonment; therefore was voidable only, and not void, and had

the effect to again place the land upon the market, and in support of that proposition cites the case of Burnam 'v. Terrell, Com'r, 97 Tex. 309, 78 S. W. 500 (Sup. Ct.). In that case Burnam applied for a writ of mandamus to compel the commissioner of the general land office to reinstate him as purchaser of detached school lands under article 4218y, Revised Statutes, 1895, insisting that since the Legislature had invested the commissioner with the power to sell the "isolated and detached" sections of school lands in the county of Menard, the duty was necessarily devolved upon him to determine what sections were "isolated and detached," and that when the commissioner had determined that question and made a sale accordingly, his decision that the land was "isolated and detached" was conclusive upon that matter. In the opinion rendered in that case, Chief Justice Gaines says that:

"It is a well-recognized rule that where an officer is empowered to determine a question of fact in the absence of some provision of law for a revision of his ruling, his decision is binding upon the courts."

The Chief Justice, after quoting the statute, applying to "isolated and detached" sections of public lands, said:

"This does not in express terms authorize the commissioner of the general land office to determine what sections were detached and what were not. But it is true that, in order to exercise the authority conferred by this provision, the commissioner must first satisfy himself that the land is detached"

—and concludes the question in these words:

"Certainly the statute quoted does not expressly confer any quasi judicial authority upon the commissioner to determine the question, nor do we think that, under the circumstances, is any such authority to be implied."

In further commenting upon that case, the court said:

"It is plain that in this case the commissioner inadvertently made a mistake, and, acting upon the belief that the land had been detached, accepted the relator's application to purchase. Mistakes of like character are not infrequent, and are perhaps in a measure unavoidable. The cases * * * brought to this court show that in such case it is the practice in the land office for the commissioner to correct his mistake by rescinding his previous action, and where he has erred in making a sale to cancel his award."

The statute applying under which the sale of section 20 was made, in this case, as that under discussion in the Burnam v. Terrell, Com'r, does not, in express terms, confer upon the commissioner any quasi judicial authority to determine the question of abandonment of the section by the purchaser. It is our opinion, under the facts found by the trial court, that the forfeitures entered by the commissioner of the general land office, where there was in fact no abandonment of the land by the purchaser, did not have the legal effect to cause a forfeiture, nor did such entries have the legal effect to place the land again upon the market; and, the entries of forfeiture having been made un-

der a misapprehension that an abandonment had taken place, the commissioner of the general land office had the power, and it was the duty of the commissioner, to reinstate the purchase of Biscanio, and to cancel the award made to Thomas as he did. It is not the practice in the land office, nor is it the law, that where an entry of forfeiture has been made inadvertently and through a mistake of fact, and the purchase reinstated, to require · to be substituted for the original a new application of purchase, and make new entry of sale, but the same original application, obligation, and award stand, and the purchase is of the date of the original sale.

[5] In subdivision sixth of the trial court's conclusions of law, the court held that the filing of the suit by Quick and Elmendorf against C. O. Thomas on August 21, 1911, to recover section 20, and dismissed on August 20, 1912, by plaintiffs, without being prosecuted to final judgment, did not operate to suspend the running of the statute of one-year limitation of 1905, and appellants assign that conclusion of the court as error, by their seventh assignment. In this ruling we think there was no error. The rule, as we understand it, is that a suit brought for the same land against the defendant, but voluntarily dismissed by the plaintiff, without a trial on the merits, and the reason for such dismissal not being sufficiently explained or accounted for, so as to relieve it of being voluntary, does not interrupt the running of the statute. We do not think the facts of Biscanio's purchase being reinstated by the commissioner, the conveyance of the interests of Quick and Elmendorf in the lands to appellants, and the cancellation of the Thomas award, Thomas not causing or in any way inducing the dismissal of the suit, sufficient to bring the case under the rule announced in Hanna v. Atchison, 141 S. W. 190.

[6] Appellants' eighth, twelfth, thirteenth, and fourteenth assignments of error, and their propositions thereunder, question the correctness of the conclusions of law of the trial court on the application of the one-year limitation act of 1905, the trial court holding that the award to appellee by the commissioner of the general land office of section 20, being voidable only, at the beginning, the commissioner having acted entirely within the scope of his statutory authority, ripened into a title conclusive against every one except the state; that the cancellation of the award of section 20 to appellee was unauthorized on any ground provided in the statute, and that the cancellation was void; that because the cancellation of the award to appellee was void, the award of section 20 to Biscanio was void; that appellee having brought this suit to set aside the award to Biscanio within a year after the award was made, the award

to Biscanio should be given no effect in this suit. The counter propositions of appellee under these assignments undertake to sustain the trial court's conclusions. Sections 1 and 2, Acts Reg. Sess. 29th Leg. 1905, p. 35, have been before the courts for construction and application quite frequently. Applying the two sections to the facts of this case, the verbiage of the sections might read thus: If Biscanio claims the right to purchase section 20 as additional land, he shall bring his suit therefor within one year after the date of the award of the sale made by the commissioner to Thomas, and not thereafter. If he (Biscanio), claiming the right to purchase section 20, has filed no suit against Thomas within one year from the date of the award to Thomas, it shall be conclusive evidence that all requirements of the law with reference to the sale to Thomas have been complied with.

The first inquiry we make in construing these sections of the law, as applied to the facts of this case, is: At the date of the award of the sale of section 20 to Thomas, or at any time thereafter was Biscanio, having complied with the law in every particular, claiming the right to buy section 20? If he had already complied in every requirement of the law to become a purchaser, and had in no particular forfeited any of his rights as a purchaser, could it be said that afterwards, and at the date of the award to Thomas, or at any time thereafter, he was then claiming the right to buy? If Biscanio had, at any time within one year before the award to Thomas, failed in any particular to comply with the requirements of the law that authorized a forfeiture of his purchase, and the commissioner had then undertaken to reinstate Biscanio's claim to purchase, and in the meantime had awarded a sale to Thomas, we think the contention of appellee could be sustained. In the case of Wyerts v. Terrell, Com'r, 100 Tex. 409, 100 S. W. 133, to which we are referred by appellee, the purchaser had made default in the interest payment, and the purchase under which Mrs. Swan was claiming had been canceled for the nonpayment of interest, but on the payment of interest, Mrs. Swan's purchase was reinstated; in the meantime a 10-year lease was made and forfeited for nonpayment of the rent. On the day the county clerk was notified of the cancellation of the lease, the relator applied to buy. Relator in his application for a writ of mandamus sought to question the validity of the reinstatement of Mrs. Swan's purchase. The court held the limitation of the act of 1905 applied to relator's suit. In that case, the Supreme Court said:

"When the commissioner, acting for the state, has made a sale of land to one person, another cannot, in any case, buy the same land while such sale is allowed by the state to stand, unless by showing that it was, or has become, null and void, leaving the land subject to purchase and sale, as if it had never occurred."

In the case of Erp v. Tillman, 103 Tex. 574, 131 S. W. 1057, to which we are referred by appellee, Erp's title to the west 240 acres of school land involved in the suit was most irregular in the number of instances pointed out by the court—the land not being on the market when he applied to buy; description defective, and sold at a less price than at which it was appraised; Tillman, claiming under a prior sale, brought the suit against Erp within a year after the award of the sale to Erp. The Supreme Court said that if a year had elapsed before Tillman brought his action and Erp had pleaded the statute, the validity of the award under which Erp claimed would not have been open to attack, but under the terms of the statute would have been conclusive evidence that all requirements of law had been complied with, on the ground that the award and its recognition by the state for a year constitutes title for such a controversy, and to those facts the statute gives conclusive effect as evidence of title, *precluding inquiry as to antecedent defects in title;* and, while the court' held that the statute under consideration was one of limitation, and contains a rule of substantive law and a rule of evidence, precluding inquiry into defects of the opposing title after one year, yet the court held that the purpose of the statute was not so much to protect purchasers who had not complied with the law as it was to prevent such interferences with sales, and to reserve to the state the election to abide by or reject them that the statute was adopted. We understand that case to mean that after an award has remained a year in good standing, no one *but the state* can point out *defects in the title.* But we do not understand that because defects in the manner of acquiring the award for a sale cannot be made a matter of defense after a year, such title, because of the statute, supersedes and takes precedence over and destroys appellants' title, and especially when the state has repudiated and canceled it. We think this view is clearly expressed in Kirby v. Conn, 156 S. W. 232, in which Chief Justice Pleasants, in discussing this same statute, said:

"The evident purpose and intent of this statute is to limit to one year the time in which an award or sale of land by the state can be attacked *on the ground of irregularity,* by one who claims only a right to purchase, and *does not affect* one whose right in the land sought to be recovered had vested prior to the award, or sale by the state, to the adverse claimant."

In Rainer v. Durrill, 156 S. W. 589, the Fourth Court of Civil Appeals, speaking through Justice Fly, in discussing the application of this limitation, said:

"It has no reference to a void sale like that in this case (sale by the state to a minor), *but to those voidable on account of some irregularity.* It is the same as though no award had been made, and no length of time could legalize it."

In the case of Davis v. Yates, 133 S. W. 281, the Fourth Court of Civil Appeals held.

that where there had been no actual settlement on the land by the purchaser at the time of his application, the act of the commissioner in awarding the land was contrary to law, outside his authority, and conferred no right, and in such case, the statute of limitation invoked did not apply.

We are of the opinion that the appellants and those under whom they claim, having in every way complied with the law under which their purchase was made, the inadvertent notation of the forfeitures of their purchases of the sections, to which section 20 was additional land, did not have the effect to put the one-year limitation statute in motion or destroy appellants' purchase of said section, or to put section 20 on the market at the time of appellee's award, and if we are right in that view of the case, we think it necessarily follows that appellee ought not to recover the land. Appellants' assignments presenting these issues are sustained, as, also, their eleventh, sixteenth, seventeenth, and eighteenth assignments.

Appellants' twentieth and twenty-first assignments of error complain of the finding of fact and conclusion of law made by the trial court, as to the permanent and valuable improvements made on the land by appellee. We are not presented with the evidence upon which the court's finding of fact was made. The issue was one of fact for the trial court to determine. House v. Stone, 64 Tex. 677. The court found that appellee had placed improvements on said land in good faith to the value of $590, but the finding does not state the value of the improvements at the time of the trial. The court does find the value of the use and occupation of the premises during the time appellee was in possession up to the time of the trial, but the value is not computed by the month or for any definite period of time, so that we could now compute the value and enter judgment on the claim for use and occupation, should we overrule appellants' assignments on that issue.

We, therefore, reverse and here render judgment for appellants for the title and possession of the land, and remand the case to the trial court, to try alone the issue of appellee's claim for permanent and valuable improvements, and on which issue we make no ruling as to appellee's right to recover.