## C. WECKESSER v. J. L. LEWIS.

Decided February 27, 1904.

**1.—School Land—Application to Purchase—Additional Land—Mistake.**

W., an actual settler on a pre-emption survey, made application to purchase an adjoining survey of school land, intending to purchase it as "additional land," but through mistake, he being old and ignorant, the application was made out for the purchase of the school land as an actual settler on it. W. was entitled to purchase the land as additional land, and the statements of the application as made showed that fact. The Commissioner awarded the land to W., and after attention was called to the mistake, rejected L.'s subsequent application to purchase it as an actual settler and L. brought this action of trespas to try title against W. for the land. Held, that W. was entitled to judgment for the land, notwithstanding the mistake.

**2.—Same—Collateral Attack—Presumption.**

L.'s action being a collateral attack on the sale by the Commissioner, who had the power to prescribe the form of the application, it may be presumed, in the absence of a contrary showing, that W.'s application sufficiently complied with the form then in use as to applications to purchase additional land, or that the regulations of the Land Office authorized the correction of such a mistake where the facts warranted the sale.

Appeal from the District Court of Hemphill. Tried below before Hon. B. M. Baker.

*H. G. Hendricks* and *C. Coffee,* for appellant.

*John W. Veale,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—The land in controversy, school section 78, block A2, in Hemphill County, after it had been duly classified as dry grazing land and placed on the market at $1 per acre, was sold to appellant by the Commissioner of the General Land Office August 10, 1898, on his application of May 24, 1898, which on its face was an application to purchase it as an actual settler, accompanied with the affidavit, obligation and cash payment required of such purchasers. Appellant has paid the annual interest ever since his purchase, and the award to him has never been canceled. Instead, however, of being an actual settler thereon at the date of his purchase, he was then and has ever since been an actual bona fide owner of and resident upon other land contiguous to said land, namely, a tract of 160 acres patented to him and described in the record as pre-emption land. When he made his application to purchase the school land he thought he was applying for it as additional land. April 5, 1901, appellee, on discovering the condition of appellant's title, undertook to settle on the land himself, and the next day made application to purchase it, complying in all respects with the law, but his application was rejected. Then it was that appellant, an old and apparently ignorant man, became aware for the first time of the mistake made in his application, and sought to correct it by filing in the Land Office an amended application and affidavit dated April 16, 1901, in which it was disclosed that he was a bona fide owner of and resident upon the

contiguous 160 acres above mentioned, and claimed the land in controversy as additional land. The facts were thus stated in his testimony: "I am 78 years old in September; I filed on section No. 78 as additional land to my knowledge. At the time I filed I was living right on a piece of pre-emption land that I have got there, which is patented land, and which I have owned and lived on ever since. I had about fifty or one thousand dollars of improvements on it. They consisted of a house, well, stables, fence, garden and orchard. At the time I filed I was living upon my homestead adjoining this land. I had no intention of becoming a settler on this No. 78, for my house and improvements were all on my homestead. I filed upon this land believing I was making proper application to purchase it as additional land. My application was accepted and I never knowed no different but it was additional land, until Mr. Lewis told me of it after he put a dugout on it."

The original application of appellant was a substantial compliance with the law providing for the sale of school lands. The requisite cash payment was made, and the obligation for the deferred payments complied fully with the law. The affidavit also contained every requisite. Rev. Stats., arts. 4218fff and 4218j. True, it contained more than was required in the purchase of additional land, and the superfluous statement that he was an actual settler on the land applied for was not true; but why should this vitiate the sale? The facts entitled appellant to purchase the land as additional land, and if he had applied for it as such it should and doubtless would have been awarded to him. It was entirely immaterial, therefore, that the statement was false. It was not even morally wrong, because it was ignorantly made and without any motive whatever for making a false statement. The substance of the transaction was a sale of school land, and one which the Commissioner was authorized to make and did make, appellant having made the requisite cash payment, the necessary obligation and an affidavit that he was not acting in collusion with others for the purpose of buying the land for any other person or corporation and that no other person or corporation was interested in the purchase save himself, which was all the affidavit required by statute of a purchaser of additional land. The mere fact that the land was applied for on the wrong ground, and by mistake at that, the real facts authorizing a sale, did not deprive the Commissioner of the power to make the sale, but was a mere irregularity. Unless the award to appellant was absolutely void for want of power in the Commissioner to make it, the land was not subject to sale when appellee applied for it, and he had no case. Therefore, on the undisputed facts above stated and the court's findings of fact, which we adopt, the judgment will be reversed and here rendered for appellant.

Since the above was written the opinion of the Supreme Court in Burnam v. Terrell, 97 Texas, 309, 9 Texas Ct. Rep., 225,

has been published in which we find the following language, which seems to express a contrary view: "The relator further avers, that at the time he made his application to purchase sections 66 and 62, he was the owner of, and resided upon, another survey of land; that these sections were within a radius of five miles of such survey, and prays that, in the event these lands in controversy were not legally sold as detached lands, he be held a purchaser as an actual settler. It is sufficient in answer to this prayer to say, that in order to have entitled him to purchase as an actual settler his applications should have been placed on that ground, and in his affidavit he should have made oath as to the facts of his ownership of and residence upon his home survey. This was not done. Therefore, although he may have been competent to purchase as an actual settler, not having applied to purchase as such, he acquired no right by his applications unless the lands were in fact detached." However, that was a mandamus proceeding, in which the Supreme Court declined to compel the Land Commissioner to treat an application made to purchase detached land as a sufficient application to purchase additional land. The statute providing for the sale of school lands under which the sale in question was made required the person desiring to purchase land in accordance with its provisions to "forward his application to the Commissioner, describing the land sought to be purchased." Sayles' Stats., art. 4218j. The form of the application was expressly left to the Commissioner, the statute (article 4218c) declaring: "He shall adopt all necessary forms of applications for sales or leases," etc. We infer from the opinion quoted that the form of application adopted by the Commissioner for the sale of additional land was materially different from that adopted for the sale of detached land, the conditions of such sales being quite different. Without a compliance, therefore, with such regulation of the Land Office the relator was not entitled to mandamus. In the case before us, which was not a controversy between an applicant and the Commissioner, it does not appear what form of application the Commissioner had adopted and was using when the land was applied for and awarded to appellant. The statute gave him the power not only to adopt regulations not inconsistent with law, but also to "alter or amend such regulations." Art. 4218c. The essential conditions of a sale to an actual settler and of a sale of additional land, while not identical, are of the same nature. Actual settlement and three years occupancy of the land applied for in the one case are required, while bona fide ownership and residence upon the contiguous land and three years occupancy of it or of the additional land are required in the other. Inasmuch as the Commissioner declined to award the land to appellee and continued to recognize the sale to appellant after the mistake in the application was discovered, we think it should perhaps be inferred that the application met the essential requirements of the form then in use. But if not, as appellant had the right to purchase

the land as additional land and intended at the time to do so, the mistake in the application being harmless, he was equitably entitled to the land, having complied fully in other respects with the law, as much so at least as one who has by mistake made his settlement on the wrong section, which has been several times upheld.

Appellee was plaintiff in the action, which was one in the ordinary form of trespass to try title, and was not entitled to recover without showing that appellant's title was absolutely void, the attack being a collateral one, and consequently that the land was subject to sale on his own application. This, in our opinion, he failed to do. The regulations of the Land Office may have authorized the correction of mistakes, such as this, in applications where the facts warranted sales, and we can see nothing unreasonable or to the prejudice of subsequent applicants in such a regulation. All the presumptions are in favor of the action of the Commissioner.

The error in the judgment, though not assigned, being fundamental, requires a reversal and rendition for appellant.

*Reversed and rendered.*

Writ of error refused.