### KING v. WISE et al.   (No. 2921.)

Court of Civil Appeals of Texas. Amarillo. Nov. 30, 1927.

1. Trial ⬅⮕351(5)—Issues submitted in suit on renewal note held to cover issues which court refused to submit as to whether defendant relied on fraudulent representations made when original note was executed.

Issues submitted, in suit on renewal note, as to whether defendant was induced by fraudulent representations to sign renewal, and whether he knew payee was demanding payment on original note and executed renewal to secure extension of time and did not rely on false representations made at time he executed original note *held* to cover issues which court refused to submit as to whether defendant believed payee would carry out representations made when he executed original note, and whether he knew payee did not intend to carry them out.

2. Appeal and error ⬅⮕1058(1)—Refusal to admit plaintiff's original petition on question of ownership of note in suit, if error, held harmless, where cross-examination showed facts relative to ownership.

In suit on note where intervener claimed to have owner's interest in note, refusal to admit plaintiff's original petition alleging plaintiff was owner of note, if error, *held* harmless, where court permitted cross-examination of both plaintiff and intervener, bringing out facts relative to character of ownership of note.

---

⬅⮕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Judges ⊙=53—Disqualification of judge affects jurisdiction and cannot be waived (Const. art. 5, § 11; Rev. St. 1925, art. 15).**

Under Const. art. 5, § 11, and Rev. St. 1925, art. 15, concerning disqualification of judges, the disqualification of a judge affects the jurisdiction and power of court to act and cannot be waived.

**4. Judges ⊙=56—Any judicial act or discretion exercised by disqualified judge is void (Const. art. 5, § 11).**

Any judicial act or discretion exercised by a judge, subject to disqualifications created by Const. art. 5, § 11, is void.

**5. Trial ⊙=316—Discharge of jury or refusal to discharge is act involving court's judicial discretion (Rev. St. 1925, art. 2200).**

Under Rev. St. 1925, art. 2200, providing for discharge of jury upon existence of certain facts and conditions prescribed, the discharge of a jury or the failure or refusal to discharge a jury is an act involving court's judicial discretion.

**6. Judges ⊙=56—Where counsel agreed disqualified judge might receive verdict in trial judge's absence and later that he might call jury in and discharge them, sending jury back for further deliberation held void act, since it involved judicial discretion (Const. art. 5, § 11; Rev. St. 1925, arts. 15, 2200).**

Where counsel agreed that judge, disqualified because he had been counsel in case, might receive verdict in absence of judge who tried case, and later agreed that he might call jury in and discharge them, his act in sending jury back for further deliberation was void, under Const. art. 5, § 11, and Rev. St. 1925, art. 15, since such action involved judicial discretion, in view of Rev. St. 1925, art. 2200, notwithstanding judge who tried case qualified bill of exceptions by stating he would have acted in same manner, and that after jury had been sent back judge, by telephone, attempted to authorize the disqualified judge to give jury certain instructions.

Appeal from District Court, Wilbarger County; P. A. Martin, Judge.

Suit by J. A. Wise against B. S. King, wherein I. G. Showers intervened. Judgment for plaintiff for the use and benefit of the intervener, and defendant appeals. Reversed and remanded.

Storey, Leak & Storey and Berry, Stokes & Killough, all of Vernon, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, and Cook, Cook & Donaghey, of Vernon, for appellees.

JACKSON, J. This suit was instituted in the district court of Wilbarger county, Tex., on December 11, 1922, by the plaintiff J. A. Wise on a note for $4,365.10, with interest, and attorney's fees thereon, executed by Rex Boyd and B. S. King on November 1, 1921, and payable to I. G. Showers, or order, on August 1, 1922.

The case was tried and a verdict directed for the plaintiff against Rex Boyd, who did not appeal, and as to him the judgment rendered on such directed verdict became final.

The court peremptorily instructed the jury to return a verdict against the plaintiff J. A. Wise, and in favor of the defendant, B. S. King, and judgment was entered accordingly. From this judgment J. A. Wise prosecuted an appeal to this court, and the judgment of the trial court was reversed and here rendered for Wise against King. 267 S. W. 543.

A writ of error was granted by the Supreme Court and the judgment of this court was reversed and the case remanded to the district court for a trial of the issues between the plaintiff Wise and the defendant, King. 282 S. W. 570.

The plaintiff, by an amended petition, filed April 25, 1927, alleged that on August 18, 1919, I. G. Showers sold and delivered to Rex Boyd certain live stock for the consideration of $5,800, evidenced by a note of that date, bearing interest at 6 per cent. per annum, containing the usual attorney's fees clause, and payable 1 year after date; that no mortgage was taken to secure the payment of said note, and Showers requested personal security and advised Boyd that if B. S. King, the defendant, would sign the note, either as joint maker or surety, Boyd could have the live stock, to which Boyd agreed; that I. G. Showers advised the defendant of the facts of the transaction, who thereupon signed the note; that said note was not paid at maturity, but in October, 1920, Rex Boyd paid thereon the sum of $2,000, and in December thereafter a renewal note for the balance of $4,-258.64, bearing 10 per cent. interest, was executed by Boyd, as maker, and the defendant, King, as indorser; that the renewal note was accepted by Showers, and that the time of the payment of the debt was extended until August 18, 1921, the interest rate changed from 6 per cent. per annum to 10 per cent. per annum, and Showers obligated not to demand payment until the maturity of the renewal note; that the extension of time, the increase in the rate of interest, and the obligation not to sue constituted a valid consideration for said renewal note; that after said renewal note became due, I. G. Showers demanded payment thereof, or, in the alternative, that the interest be paid and a new note given; that on December 1, 1921, a portion of the interest having been paid, Boyd, as principal, and King, as joint maker or surety, executed a renewal note in the sum of $4,365.-10, payable August 1, 1922, bearing interest at the rate of 10 per cent. per annum, and containing the usual stipulation for attorney's fees; that said second renewal note was accepted, which obligated Showers to extend the time of payment, receive the interest, and not sue or attempt to collect the debt until the maturity of said second renewal note, which constituted a valid consider-

ation for said second renewal note, which note would not have been accepted unless signed by both Boyd and King; that said last described note was placed in the possession of the plaintiff, who was authorized to collect it when it became due; that after the maturity thereof, the plaintiff demanded payment of both Rex Boyd and the defendant, which was refused, and the note was placed in the hands of an attorney for collection, suit, etc.; that since the judgment against Rex Boyd, which became final, no further payment has been made; that for the reasons alleged the defendant, B. S. King, is liable to plaintiff for the principal, interest, and attorney's fees on said note, which aggregate the sum of $7,415.78.

The defendant, B. S. King, answered by general exceptions, general denial, and pleaded as a defense that the note sued on was 'given in renewal of an original note executed by Rex Boyd, and accepted by I. G. Showers, as the consideration for certain live stock; that several days after the delivery of the live stock by Showers to Boyd and after the consummation of said transaction, Showers, without the knowledge or consent of Boyd, induced the defendant to sign the original note by representing that Boyd was financially responsible and able to pay the note, and if the defendant would sign the note with Boyd, as an accommodation surety for Showers, that Showers would not hold defendant liable on the note or expect him to pay it unless Rex Boyd died before the maturity of said note, and that the defendant, relying on said representations, signed the note; that such promises and representations were false and untrue when made, and were falsely and fraudulently made for the purpose of inducing the defendant to sign said note, and that I. G. Showers, at the time of making such false and fraudulent representations, did not intend to keep them, and thereby procured the signature of the defendant to said note, and that he received no consideration or benefit whatever, either for the execution of the original or the renewal note; that the original and renewal notes are past due, and that said Boyd is still living; that at the maturity of the original note, Showers requested the defendant to sign a renewal thereof as accommodation surety, and, relying on the representations, promises, and agreements made at the time of the execution of the original note, and without any additional consideration, the defendant signed the renewal note, which is the one in controversy; that at the time he executed the renewal note, he supposed he might, in some event, be liable on the original note, but had he known or been informed, as he now is, that he was, in no event, liable on the original note, he would not have signed the renewal note, and in so doing, he did not intentionally or knowingly waive any defense to the original note, and received no consideration therefor. The defendant denied that the plaintiff is the owner and holder of the note and denied that he is an innocent purchaser for a valuable consideration, but if he is the owner of the note, he acquired it after maturity and had full knowledge of the defenses urged by this defendant.

The plaintiff, by first supplemental petition, denied that the note in suit was a renewal of the original note, denied the plea of failure of consideration, denied the false and fraudulent representations alleged by the defendant, and says that, if the defendant was mistaken as to his legal liability, such mistake was not due to any fault or misconduct on the part of plaintiff.

By permission of the court, I. G. Showers intervened and alleged that he was the legal and equitable owner of the proceeds derived from the collection of the note; that he authorized the institution and prosecution of the suit by the plaintiff, and adopted the pleadings of the plaintiff in the first amended original petition.

By supplemental answer, the defendant, King, denied the allegations of intervener's petition and adopted his original answer in reply thereto.

In response to special issues submitted by the court, the jury found, in effect, that Showers procured the signature of the defendant on the original note by representing, in substance, that he did not intend to hold the defendant liable thereon except in the case of Boyd's death; that his intention in making such representations was fraudulent; that the defendant relied thereon and was induced to sign the note thereby; that the defendant, King, did not sign the renewal note sued upon relying upon said representations; that the interest rate charged in the original note was 6 per cent.; that the defendant did not sign the original note to assist Boyd in the purchase of the cattle; that he signed it only to assure Showers that the note would be collected out of Boyd's estate, if he should die; that Showers had accepted the note of Rex Boyd in full payment for and delivered the cattle, before defendant, King, signed the original note; that defendant, King, knew that Showers was demanding payment of him of the Boyd note before the renewal note in suit was signed; that Showers made no representations verbally or in writing to the defendant, at or before the execution of the renewal note, to induce him to execute it; that Showers would not have accepted the renewal note if the same had not been signed by the defendant; that the defendant signed the renewal note in suit to induce Showers not to bring suit on the indebtedness at that time and to secure an extension of time on said note; that he signed the renewal note in suit for the benefit of Boyd to aid him in securing an extension of

time; that I. G. Showers, at the time he made the promises, statements, and representations, did not intend to carry them out.

On these answers the court rendered judgment for the plaintiff that he have and recover, for the use and benefit of the intervener, against the defendant, B. S. King, the sum of $7,428.65, with interest from the date of the judgment, at the rate of 10 per cent. per annum, from which judgment B. S. King prosecutes this appeal.

Appellant, by numerous assignments, challenges the action of the court in rendering judgment against him, because the jury having found that he was induced by false and fraudulent representations to sign the original note, after the live stock transaction between Showers and Boyd had been closed, the testimony was neither sufficient to authorize the court to submit nor the jury to find that appellant was not induced by such false and fraudulent representations to sign the renewal note, and to also find that Showers was demanding of the defendant payment of the debt before the renewal note was executed, and that the defendant signed such renewal note in order to keep Showers from suing thereon, and to assist Boyd in obtaining an extension of time for the payment thereof, and that the renewal note would not have been accepted without the defendant's signature thereto.

The testimony tends to show that the original note was placed with the bank for collection and later turned over to a lawyer; that both Boyd and King were notified that the original note was due; that when it matured, Boyd was unable to pay it and advised Showers if it was paid, King would have to pay it; that Boyd asked for more time; that the interest rate was changed from 6 per cent. per annum to 10 per cent. per annum, the time of payment extended, and a renewal note given, executed by both Boyd and King, who were brothers-in-law; that there were two renewal notes and Showers had demanded of King that he pay the debt before he executed the note sued on, although Boyd was still living.

We shall refrain from an extended statement or discussion of the testimony, but believe the evidence sufficient to warrant the submission of the issues and the findings of the jury thereon.

[1] The appellant assigns as error the action of the court in refusing to submit, at his request, the issues, whether the defendant believed at the time he signed the renewal note, that Showers would carry out the representations and promises made at the time he executed the original note, and whether the defendant knew, at the time the renewal note was signed by him, that Showers did not intend to carry out such representations.

The court submitted and the jury found, on sufficient testimony, that Showers made no representations, at or before the execution of the renewal note, to induce defendant to sign it; that the defendant knew that Showers was demanding the payment of the debt before the renewal note was signed by him, and he executed it to secure an extension of the time of payment and did not rely on the false and fraudulent representations made to him at the time he executed the original note. These issues and findings, in our opinion, sufficiently comprehend the special issues requested by the appellant.

[2] The appellant assigns as error the action of the trial court in refusing to permit him to introduce in evidence the portion of plaintiff's original petition, in which he alleged that he was the owner of the note sued on, having acquired it from I. G. Showers in due course, for a valuable consideration, and before maturity. The appellant was permitted, on cross-examination, to elicit from both the plaintiff Wise and the intervener Showers the facts relative to the character of the ownership of the note, its possession by Wise, and the suit brought thereon by him, and, in view of this record, the refusal of the court to permit the introduction of the testimony excluded did not, in our opinion, constitute reversible error.

The appellant presents, on proper assignments, the following proposition:

"This case having been tried before Hon. P. A. Martin, Judge of the Eighty-Ninth Judicial District of Texas, because of the regular judge of the district, to wit, Hon. Robert Cole, being disqualified on account of having been of counsel for plaintiff upon a former trial of the case, therefore the acts of the regular judge, to wit, Hon. Robert Cole, in directing the jury, whom he had caused to be called before him by agreement of counsel in the case for the purpose of discharging them, if they had not reached a verdict, when, in ascertaining from the jury that they had not answered the questions, instead of then and there discharging them, under said agreement, by then and there instructing and directing the jury to retire to the jury room and further deliberate on the case, was illegal and prejudicial in that it was the exercise of judicial power and judicial discretion in the case, which power and discretion he did not possess because he was disqualified to so act under the Constitution and laws of the state, and any judgment rendered upon such a verdict, under such proceedings, is null and void."

The facts on which this proposition is based are revealed in a bill of exception and the qualification thereto, which read:

"This cause was tried before Hon. P. A. Martin, Judge of the Eighty-Ninth District of Texas, by agreement of all parties on account of the fact that Hon. Robert Cole, the judge of this district, was disqualified by reason of having been of counsel for the plaintiff upon a former trial of this case.

"After the evidence was concluded and the jury had retired to consider their verdict, it was agreed by counsel on both sides that Judge P. A.

Martin might return to his home in Wichita Falls, and that Judge Cole might receive the verdict of the jury.

"The jury retired to consider their verdict about 11 o'clock a. m., Wednesday, April 27, 1927, and remained out all that afternoon, but reached no verdict, and did not answer all of the 14 issues submitted to them; they came back the next morning, and began deliberating, and after being out more than an hour without making any report, local counsel for the plaintiff, J. S. Cook, and W. D. Berry and Cecil Storey, counsel for the defendant, agreed that it looked like the jury was hopelessly hung, and agreed between themselves that Judge Cole might call them in and if they had not reached a verdict that he could discharge them; whereupon said attorneys made known such understanding to Judge Cole, and he instructed a deputy sheriff to call to the jury; and when they came in Judge Cole asked J. S. Blanton, the foreman, if they had reached a verdict to which Blanton replied in the negative. Judge Cole then asked the foreman 'if there was any likelihood of their reaching a verdict,' to which the foreman replied 'that they might,' and Judge Cole told them to go back and see if 'they could answer the issues.' But, before the said jury retired, another of the members of the jury, one Mr. Beason, asked this question, 'Judge, if we cannot answer all of the questions, then can we answer part of them?' to which question Judge Cole replied, 'I have no authority to give you any instructions.'

"Then J. S. Cook, in a low but audible tone, said, 'I am willing for Judge Cole to tell them to answer such questions as they can;' the said W. D. Berry and Cecil Storey then told Cook they would not agree for Judge Cole to give them any instructions, except to discharge them as per the agreement for him to do so.

"Some 2 or 3 minutes were taken up with the discussion between said Cook, Berry, and Storey; the jury all standing in the court room in front of the judge's bench some 7 to 10 feet therefrom while said discussion was going on; and finally, Judge Cole told the jury that he was not authorized to give them any instructions except to go back and see if they could reach a verdict.

"Whereupon the jury retired and remained out until about 12 o'clock on the same day, when they returned into court and handed to Judge Cole the verdict, as shown by their answers to the court's charge.

"Hon. P. A. Martin, before whom said case was tried, some 30 or 40 minutes after the above had transpired, called one of the defendant's attorneys and inquired what had transpired, which was briefly related to him by Mr. Storey, and he then asked Mr. Storey to prepare a charge and give it to Judge Cole and have him sign his (Martin's) name thereto, instructing the jury to answer such of the questions as they could and have the foreman sign the same, which instructions the said Storey carried out and in said conversation told Judge Martin that he would not except to the failure of Judge Martin to be personally present to give such instruction, nor to Judge Cole signing his (Martin's) name to the said instruction, but that he would except to the giving of said charge and save the point in the interest of his client, and that he would prepare exception to the proceedings above set out, which he had briefly detailed to Judge Martin, for the reason that he thought

Judge Cole had no authority to do anything but to discharge the jury when they were called in, and that sending them back for further deliberations was the exercise of a power which he did not have under said agreement, and that the same was prejudicial and calculated to injure the rights of the defendant. And said defendant then and there excepted to the giving of said charge and to the action of Judge Cole, as set forth herein, and acts and conduct of said J. S. Cook, as above set forth, in the presence of the jury, for the reason that the special charge of the court under such circumstances was not authorized, but was calculated to mislead the jury and was prejudicial, and the action of Judge Cole in sending the jury back for further deliberation was unauthorized by the agreement above referred to, and was the exercise of judicial powers he did not possess in the case; and that the conversation of said Cook, as detailed above, and arguing in the presence of the jury and before they were sent back to the jury room was prejudicial and is calculated to mislead the jury, and the defendant here and now offers and in open court tenders this his bill of exception, and prays that the same may be examined, signed, and approved by the court and ordered filed as a part of the record in this case.

"Storey, Leak & Storey,
"Attys. for Defendant.
"Berry, Stokes & Killough."

"This bill of exception is approved by me with the following qualifications:

"As soon as the argument in the case was concluded and I had sent the jury out with instructions, I called counsel to the bench and informed them that I had important cases set for trial in the Eighty-Ninth District Court of Wichita county awaiting me, and asked them to agree that Judge Cole might for me and in my name, place, and instead receive the verdict of the jury. To this counsel for both sides readily agreed, so I asked Judge Cole to do this for me, informing him of counsel's consent, and left for my home court.

"The next thing I heard about the trial was the information from the office of Mr. Weeks, one of the attorneys for the plaintiff, that the jury had asked whether they could answer a portion of the issues or whether they were required to answer all of the issues; and that Judge Cole had informed them that he had no authority to give them instructions of any sort. Mr. Weeks suggested he would take me back in his car, so I could answer this inquiry, and I suggested that I call counsel for the defendant and agree that Judge Cole could sign my name to this simple instruction, dictated by me; so I called Mr. Storey, as stated in the bill, and he, at my dictation, wrote the instruction, read it back to me over the phone, and agreed that Judge Cole should sign my name to it and hand it to the jury. He said that he would except to the charge being given at all, but not to the manner of its giving; and I understood him to say that his exception would be based on an agreement with Cook to the discharge of the jury, and that he would except to the fact of Judge Cole sending them back for further deliberations.

"I want to state further that Judge Cole did exactly what I would have done; had I questioned them, and if they had told me they might reach a verdict, before discharging them, I would have sent them back for further deliberations.

If they had thought there was a chance for them to agree, I would not have discharged them, even upon agreement of counsel under the same circumstances.

"I desire to further state that I returned to Vernon on the evening of April 30th and entered judgment in the case, and there heard in open court, from Mr. Cook, Mr. Berry, Mr. Storey, and Judge Cole, as to all that happened, and from their statements to me, thus made, in open court, I find as a fact that Judge Cole did nothing. more than what I personally would have done, had I been personally present, and that his action in the matter is entirely within the spirit, if not the letter, of the agreement of counsel before I left for Wichita Falls.

"I will further state in this connection that no one claimed or asserted that the conversation of the plaintiff's attorney, Cook, while the jury were in the court room was sufficiently loud to be heard by the jury.

"With this explanation and qualification to this bill, it is hereby approved and filed this the 6th day of May, 1927.
　　　　　　　　　　　　　　"P. A. Martin, Judge."

A portion of article 5, § 11, of the Constitution of the state, provides:

"No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

Article 15, R. C. S., reads:

"No judge or justice of the peace shall sit in any case where he may be interested or where either of the parties may be connected with him by affinity or consanguinity within the third degree, or where he shall have been counsel in the case."

[3, 4] The disqualification of a judge "is held to be a question that affects the jurisdiction and power of the court to act, and one which cannot be waived." Chambers v. Hodges, 23 Tex. 105; City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220; Lee v. British-American Mortgage Co., 51 Tex. Civ. App. 272, 115 S. W. 320. Any judicial act or discretion exercised by a judge subject to disqualifications created by the Constitution is void. Chambers v. Hodges, supra; Newcome v. Light, 58 Tex. 141, 44 Am. Rep. 604; Templeton v. Giddings (Tex. Sup.) 12 S. W. 851; Nona Mills Co. v. Wingate, 51 Tex. Civ. App. 609, 113 S. W. 182; Lee v. British American Mort. Co., 51 Tex. Civ. App. 272, 115 S. W. 320. "The distinction between ministerial, and judicial and other official acts, seems to be, that where the law

prescribes and defines the duty to be performed, with such precision and certainty as to leave nothing to the exercise of discretion, or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial." Commissioner v. Smith, 5 Tex. 479; Burnam v. Terrell, 97 Tex. 309, 78 S. W. 500.

[5] Article 2200, R. C. S., provides for a discharge of the jury "by the court," after a case has been submitted to them, upon the existence of certain facts and conditions therein prescribed, which, in the opinion of the court, authorize such discharge, and this article, in our opinion, manifestly makes the discharge of a jury an act requiring the judicial discretion of the court, from which it must necessarily follow that the failure or refusal to discharge a jury is also an act which involves the judicial discretion of the court. M., K. & T. Ry. Co. of Texas v. Barber (Tex. Com. App.) 209 S. W. 394.

The first division of said article directs that a jury may be discharged "by the court when they cannot agree and both parties consent to their discharge, or when they have been kept together for such time as to render it altogether improbable that they can agree."

[6] It is admitted that the regular district judge, Hon. Robert Cole, was disqualified, under the Constitution and statute; that the case had been submitted to the jury, and after its deliberation on its verdict for several hours counsel for appellant and appellee agreed that it looked like the jury was hopelessly hung, and that Judge Cole might call them in, and, if a verdict had not been reached, he could discharge them; that this agreement was made known to Judge Cole, and he instructed a deputy to call in the jury; that when the jury appeared, he asked the foreman if they had reached a verdict and was advised in the negative; that he then asked the foreman "if there was any likelihood of their reaching a verdict," and was informed by the foreman, "that they might," and he then told them to return and see if "they could answer the issues." He thereby decided that the jury had not been "kept together for such time as to render it altogether improbable" that a verdict would be reached. This, in our opinion, without discussing any other act by Judge Cole, requires a reversal of the case.

The judgment is reversed and the cause remanded.