

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 27, 2003

The Honorable Kevin Bailey
Chair, Committee on General Investigating
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0076

Re: Whether a school district may voluntarily pay the medical expenses and travel costs for a student injured in school or during a school activity (RQ-0007-GA)

Dear Representative Bailey:

Your predecessor as Chair of the House Committee on General Investigating asked whether state law prohibits an independent school district from voluntarily paying for a student's medical expenses and travel costs related to an injury sustained by the student while in school or involved in a school activity.[1]

## I.    Background

These questions arise in connection with the Iraan-Sheffield Independent School District's expenditures for treating an injury sustained by a high school student during the 2001-2002 school year.[2] *See* Request Letter, *supra* note 1, at 1. The request letter states that the student was injured in a wood shop class when her hand was caught under a board on a sanding machine, badly injuring two fingers. *See id.* She was stabilized at the local emergency room and sent to Midland for further treatment. *See id.* The attending physician in Midland recommended transfer to a specialist in Dallas, and the student and her mother were flown to Dallas at district expense. *See id.* Following surgery, which restored the use of her injured fingers, the student had to return for follow-up examinations and physical therapy. *See id.* The district provides an accident insurance policy for all students and has not been billed for any medical expenses related to this incident, but it paid transportation costs for the visits. *See id.* at 2. The school nurse accompanied the student on some occasions because the parents had limited ability to speak English. *See id.* at 1.

---

[1]Letter from the Honorable Pete P. Gallego, Chair, House Committee on General Investigating, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General, at 1 (Dec. 4, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2]The Iraan-Sheffield Independent School District is located in Pecos County, Texas. *See* Education, Pecos County, Texas, *available at* http://www.co.pecos.tx.us/ed.html.

"While the Iraan-Sheffield Independent School District was under no legal obligation to pay these costs, school trustees felt a moral obligation to assist a student in their jurisdiction and under their care." *Id.* at 2. In August 2002, the school trustees voted to discontinue paying further travel expenses for the student out of concern for the legality of providing transportation and expenses for students injured at school or school-related activities. *See id.* We are not asked to review the school board's expenditures in this matter but to address the following general questions about school district expenditures on behalf of injured students:

> Does state law prohibit an independent school district from voluntarily paying for medical expenses and travel costs related to an injury suffered by a student while the student is in school or involved in a school activity?

> Does any such prohibition extend to a coach or trainer transporting a student to and from surgery, follow-up visits, and physical therapy related to an injury in an athletic activity?

> Does any such prohibition extend to the provision of various related services provided by the school district through campus clinics, school nurses, and/or athletic trainers?

> Do any of the acts described above constitute a "gift" of taxpayer funds prohibited by law?

*Id.*[3] Our answers are limited to school districts and do not apply to state agencies or other governmental entities.

## II.     Legal Background

The school district is protected by sovereign immunity from liability for the student's medical costs and other damages resulting from the injury. Unless waived, sovereign immunity protects the state and its subdivisions from both suit and liability for damages. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. ch. 101 (Vernon 1997 & Supp. 2003), provides for governmental liability in tort and waives sovereign immunity to the extent stated in its provisions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.025 (Vernon 1997). However, the Tort Claims Act does not waive sovereign immunity for school districts "[e]xcept as to motor vehicles." *Id.* § 101.051. Furthermore, school teachers and other professional school district employees are not personally liable for an act within the scope of the employee's duties that involves the exercise of judgment or discretion, with narrow exceptions. *See* TEX. EDUC. CODE ANN. § 22.051, 22.051(c) (Vernon 1996); *Downing v. Brown*,

---

[3]In answering the questions, we do not address a school district's responsibility to provide health-related services to disabled students under the federal Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1461 (2000), or Texas Education Code, sections 29.001-.017.

935 S.W.2d 112 (Tex. 1996). Thus, with rare exceptions, neither a school district nor a teacher would be liable for damages for an injury sustained by a student during a classroom activity.

Article III, section 52(a) of the Texas Constitution provides that "the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation." TEX. CONST. art. III, § 52(a); *see also id.* art. III, § 51 (legislature has no power to authorize the making of any grant of public money to any individual). When a governmental entity is not liable on a claim, the payment of that claim constitutes "a pure gift or donation" and violates the constitution. *Tompkins v. Williams,* 62 S.W.2d 70, 71 (Tex. Comm'n App. 1933, judgm't adopted); *accord State v. City of Austin,* 331 S.W.2d 737, 742 (Tex. 1960); *see also* Tex. Att'y Gen. Op. No. GA-0062 (2003) at 2 (school district's payment of non-prevailing party's attorneys' fees is a gratuitous donation of public funds).

The constitutional prohibition against donating public funds to private individuals does not prevent governmental entities from using public funds to carry out their public purposes. *See City of Austin,* 331 S.W.2d at 743. Despite a school district's immunity from damages under the Tort Claims Act, a school board may, under other authority, make reasonable provisions for an injured student's care. The legislature and the courts have long recognized a school district's interest in protecting and providing for the health and safety of students under their supervision. *See Moseley v. City of Dallas,* 17 S.W.2d 36 (Tex. Comm'n. App. 1929, judgm't adopted) (because physical condition was relevant to a student's ability to learn, school board could establish and maintain a school health department to provide physical examinations to students); TEX. EDUC. CODE ANN. §§ 21.002(a) (Vernon 1996) (employment of school nurses), 33.085 (Vernon Supp. 2003) (purchase of insurance policy to fund medical treatment for students injured at school), 33.086 (Vernon Supp. 2003) (head coach or chief sponsor for an extracurricular athletic activity, including cheerleading, must be certified in first aid and cardiopulmonary resuscitation).

School districts have also established school-based clinics or health centers where students may receive primary health services.[4] Legislation adopted in 1999 authorizes school districts to provide health care services to students and their families through a school-based health center and provides a grant program for qualifying centers. *See* TEX. EDUC. CODE ANN. §§ 38.051-.064 (Vernon Supp. 2003).[5]

Section 33.085 of the Education Code authorizes the board of trustees of a school district to "obtain insurance against bodily injuries sustained by students while training for or engaging in interschool athletic competition or while engaging in school-sponsored activities on a school campus." *Id.* § 33.085(a). This provision further states that

---

[4]*See* TASK FORCE ON SCHOOL HEALTH SERVICES, REPORT TO THE STATE BOARD OF HEALTH, "Extended School Health Services," (Apr. 1998) *available at* http://www.tdh.state.tx.us/schoolhealth/tf_8b.htm (last visited May 14, 2003).

[5]*See* Act of May 26, 1999, 76th Leg., R.S., ch. 1418, § 1, 1999 Tex. Gen. Laws 4847,4847-49, *renumbered by* Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 4.005, 2001 Tex. Gen. Laws 4210, 4218-21.

(b) The amount of insurance to be obtained must be in keeping with the financial condition of the school district and may not exceed the amount that, in the opinion of the board of trustees, is reasonably necessary to afford adequate medical treatment of injured students.

(c) The insurance authorized by this section must be obtained from a reliable insurance company authorized to do business in this state and must be on forms approved by the commissioner of insurance.

(d) The cost of the insurance is a legitimate part of the total cost of operating the school district.

(e) The failure of any board of trustees to carry the insurance authorized by this section may not be construed as placing any legal liability on the school district or its officers, agents, or employees for any injury that results.

*Id.* § 33.085(b)-(e).

This statute reflects the school district's interest in restoring an injured student's fitness to attend school and to participate in athletic contests and other extracurricular activities, an interest served by funding the student's medical treatment. As adopted in 1959, the predecessor of section 33.085 related only to insurance for participation in athletics. *See* Act of Apr. 16, 1959, 56th Leg., R.S., ch. 124, 1959 Tex. Gen. Laws 215. A 2001 amendment to section 33.085, however, allowed the school board to obtain insurance "not only against bodily injuries sustained by students engaged in athletics, but also in other school-sponsored activities on a school campus." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 2301, 77th Leg., R.S. (2001). Section 33.085 applies to classroom activities, as demonstrated by a bill analysis referring to the explosion of a high school chemistry lab where several students were badly burned, including one whose parent had no insurance. *See id.* Pursuant to this provision, a school district may purchase insurance to pay a student's medical costs for an injury sustained at school or while involved in a school activity.

A school board may also pay transportation costs incidental to providing medical care to a student. Education Code, section 45.105(c) authorizes a school district board of trustees to spend local school funds for various purposes, including "other purposes necessary in the conduct of the public schools determined by the board of trustees." TEX. EDUC. CODE ANN. § 45.105(c) (Vernon Supp. 2003); *see also id.* § 11.151(b) (Vernon 1996) (school board authority to "govern and oversee the management of the public schools of the district"). School boards have wide latitude to determine what expenditures are "necessary" for public schools and thus within the spending authority of Education Code, section 45.105(c), and its predecessor, former Education Code, section 20.48. *See, e.g., City of Garland v. Garland Indep. Sch. Dist.*, 468 S.W.2d 110, 111-12 (Tex. Civ. App.–Dallas 1971, writ ref'd n.r.e.) (trustees could determine whether expenditure for paving streets abutting school property was "necessary in the conduct of the public schools"); Tex. Att'y Gen. Op. Nos. JC-0165 (2000) at 10 (trustees could determine that expenditure for "early exit" retirement plan

was necessary); JM-1265 (1990) at 4 (trustees might find college scholarships to be "necessary in the conduct of the public schools"); H-133 (1973) at 5, 7 (trustees could determine that trustees' travel and legal expenses were "necessary"); C-601 (1966) at 3-4 (trustees have discretion to determine whether expending surplus money from operation of school cafeteria to provide lunches to needy pupils is "necessary cost in the efficient conduct of its public schools"). A school board may pay travel costs ancillary to providing medical care for an injured student if it determines, in the exercise of reasonable discretion, that these expenditures are necessary in the conduct of the public schools. The district's determination is subject to judicial review. *See* Tex. Att'y Gen. Op. Nos. JC-0165 (2000) at 11; H-133 (1973) at 4.

## III.     Specific Questions

We address the specific questions.

### A.     Question One

We are first asked whether state law prohibits a school district from voluntarily paying medical expenses and travel costs related to an injury sustained by a student while in school or involved in a school activity. As stated above, Texas statutes do not prohibit a school district from voluntarily paying medical expenses and travel costs for students injured at school or in a school-related activity. Section 33.085 expressly authorizes a school board to purchase insurance. The school board may pay reasonable travel expenses related to treating student injuries sustained at school or during a school activity, if the board determines that the expenditure is necessary in the conduct of the public schools.

### B.     Question Two

The next question is whether a coach or trainer may transport a student to and from surgery, follow-up visits, and physical therapy related to an athletic injury. The request letter states that school districts routinely furnish transportation in these cases. *See* Request Letter, *supra* note 1, at 2. A school district may authorize coaches and trainers to provide such transportation as a job responsibility if the board determines that this activity promotes an objective of the school district and that it is appropriate to a coach or trainer's job description. A coach or trainer may also provide transportation on his or her own time without using school district resources. The school board and the coach or trainer should be aware of other applicable statutes. For example, school districts are subject to the Tort Claims Act "as to motor vehicles." *Id.* Statutes or board rules requiring parental consent may also apply. *See generally* Tex. Att'y Gen. Op. No. DM-378 (1996) at 2-3 & n.4 (issues relating to transportation of public school students in privately-owned vehicles operated by parents and teachers).

### C.     Question Three

We are next asked whether state law prohibits a district from providing various related services through campus clinics, school nurses, and/or athletic trainers. We answer this

question generally, because the related services required in connection with a student's injury will depend on the nature of the injury. The board of trustees may provide "related services" to injured students if it determines that these services are necessary in the conduct of the public schools. Other statutes are relevant to providing services through school nurses and athletic trainers. Licensed health professionals may provide professional services only within the terms of the practitioner's act. *See, e.g.,* TEX. OCC. CODE ANN. chs. 301 (Vernon 2003) (Nursing Practice Act), 451 (athletic trainers); *see also* TEX. EDUC. CODE ANN. § 21.003(b) (Vernon 1996) (school district may not employ a person as an audiologist, physician, nurse, school psychologist, or certain other professionals unless the person holds the applicable state license). Questions about the health care services that a campus clinic or school-based health center provides to students must be addressed to the specific clinic or school-based health center.

## D.     Question Four

We are finally asked whether a school district's voluntary provision of such services constitutes a "gift" of taxpayer funds prohibited by law, a question relevant to the expenditures discussed in the first three questions. Under Texas Constitution, article III, section 52(a), the legislature may not authorize a political corporation, including a school district, to grant public money or anything of value to an individual. *See* TEX. CONST. art. III, § 52(a); *see also id.* art. III, § 51 (legislature has no power to authorize the grant of public money to any individual). This constitutional provision prevents the gratuitous grant of public funds for private purposes. *See Byrd v. City of Dallas,* 6 S.W.2d 738, 740 (Tex. Comm'n App. 1928, judgm't adopted); Tex. Att'y Gen. Op. No. GA-0062 (2003). An expenditure of public funds for a public purpose is not, however, an unconstitutional grant of public funds. *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 383 (Tex. 2002); *Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 740 (Tex. 1995). An expenditure to accomplish a public purpose is constitutional even though it incidentally benefits a private interest. *See Byrd,* 6 S.W.2d at 740; *Graves v. Morales,* 923 S.W.2d 754, 757 (Tex. App.–Austin 1996, writ denied).

A school board may pay for its students' medical expenses, incidental travel, and other incidental services related to an injury sustained at school only if the expenditure accomplishes a public purpose. The Texas Supreme Court has stated the following three-part test to determine if a statute accomplishes a public purpose:

> [T]he Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Tex. Mun. League Intergovernmental Risk Pool,* 74 S.W.3d at 384. This test also applies to political subdivisions exercising delegated legislative powers. *See* Tex. Att'y Gen. Op. Nos. JC-0212 (2000) at 3-4; JC-0113(1999) at 2; DM-256 (1993) at 2-3.

The school district's payment for student medical expenses related to an injury sustained while in school or involved in a school activity will not constitute a gift of public funds prohibited by article III, section 52 if the school board (1) determines that the expenditure's predominant purpose is to accomplish a public purpose, not to benefit private parties, (2) retains sufficient control over the expenditure to ensure that the public purpose is accomplished, and (3) ensures that the school district receives a return benefit. When the school board applies this test to its expenditures for ancillary services, such as transportation to physical therapy sessions, it must consider whether these primarily benefit the school district or the individual. The school district must place sufficient controls on the expenditure to ensure that its public purpose is accomplished. Contractual terms may provide sufficient control of some expenditures. *See Key v. Comm'rs Ct. of Marion County*, 727, S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ). Controls such as application requirements and limits on travel expenditures may be established by the board's exercise of rule-making power. *See* TEX. EDUC. CODE ANN. § 11.151(d) (Vernon 1996). The return benefit received by the school district need not be monetary, but instead may be accomplishing the school district's public purpose. Whether a particular school board action complies with the constitution raises fact questions that cannot be addressed in an attorney general opinion. *See* Tex. Att'y Gen. Op. Nos. GA-0061 (2003) at 9; GA-0003 (2002) at 1 n.2; M-187 (1968) at 3.

## S U M M A R Y

Section 33.085 of the Education Code authorizes a school district to purchase an insurance policy to cover a student's medical expenses for bodily injuries sustained in connection with interschool athletics or while engaging in school-sponsored activities on campus. A school district may pay medical costs and incidental travel costs for a student injured at school or in connection with a school activity if the school board determines that the expenditure is necessary in the conduct of the public schools.

The district's payment of travel costs will not constitute an unconstitutional gift of public funds to an individual if the school board (1) determines that the expenditure's predominant purpose is to accomplish a public purpose, not to benefit private parties, (2) retains sufficient control over the expenditure to ensure that the public purpose is accomplished, and (3) ensures that the school district receives a return benefit.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee